**SAMPSON & ASSOCIATES**
Bryan D. Sampson, Esq. (#143143)
Mary L. Fickel, Esq. (#221872)
2139 First Avenue
San Diego, California 92101
Tel. (619) 557-9420 / Fax (619) 557-9425
bsampson@sampsonlaw.net

Attorneys for Judgment Creditor
AIRLINES REPORTING CORPORATION

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 • FACSIMILE (619)557-9425

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRLINES REPORTING CORPORATION,<br><br>Plaintiff/Judgment Creditor,<br><br>v.<br><br>COMMERCIAL TRAVEL CORPORATION d/b/a MATLOCK TRAVEL, et al.,<br><br>Defendants/Judgment Debtors. | Case No. 08-MC-00088<br><br>**NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF MOTION FOR AN ASSIGNMENT ORDER**<br><br>Date:<br>Time:<br>Ctrm:<br>Judge: |

Creditor ARC submits the following documents to the Court.

**Exhibit**        **Description**

"1"        United States District Court, District of Kansas, Judgment and Commitment Order

"2"        United States v. Renda, 609 F. Supp. 1544 (Kan. 1987).

"3"        Creditor's Request for Production of Documents.

"4"        Debtor Renda's Responses to Creditor's Request for Production of Documents.

"5"        Order Entering Judgment in Renda v. Nevarez, Case No. GIC798346.

"6"        First Amended Complaint in Renda v. Nevarez, et al., Case No. 37-2007-00075627-CU.

"7"        Renda's Sanction Threat Letter.

"8"        Creditor's proposed Assignment Order.

DATED: April 17, 2008              **SAMPSON & ASSOCIATES**

                              By:    /s/ Bryan D. Sampson
                                     Attorneys for Judgment Creditor
                                     E-Mail: bsampson@sampsonlaw.net

1

# EXHIBIT "1"

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| NAME | DATE | |
| ROSE PARISSE | 4-4-08 | |
| TITLE  Assistant Director | | |

NAME AND ADDRESS OF DEPOSITORY
NATIONAL ARCHIVES & RECORDS ADMIN
CENTRAL PLAINS REGION
2312 EAST BANNISTER ROAD
KANSAS CITY  MO  64131

NA FORM 13040 (10—86)

# United States District Court for

vs.

the District of Kansas

Mario Renda

DOCKET NO. ———— 87-20049-01

## JUDGMENT AND PROBATION/COMMITMENT ORDER    AO-245 (9/82)

**COUNSEL**

In the presence of the attorney for the government
the defendant appeared in person on this date ————————▶

| MONTH | DAY | YEAR |
|---|---|---|
| April 10, 1989 | | |

[ ] **WITHOUT COUNSEL**    However the court advised defendant of right to counsel and asked whether defendant desired to have
counsel appointed by the court and the defendant thereupon waived assistance of counsel

[X] **WITH COUNSEL**  Ronald G. Russo/James R. Wyrsch – Retained
(Name of Counsel)

**FILED**

**PLEA**

[X] **GUILTY,** and the court being satisfied that    [ ] **NOLO CONTENDERE,**    [ ] **NOT GUILTY**
there is a factual basis for the plea,

APR 13 1989

RALPH L. DeLOACH, Clerk

By _____ Deputy

**FINDING & JUDGMENT**

There being a finding/verdict of {
[ ] **NOT GUILTY.** Defendant is discharged
[X] **GUILTY.** to Counts 2 and 14 of Indictment.

Defendant has been convicted as charged of the offense(s) of Fraud by Wire, in violation of
18 U.S.C. 1343, (Counts 2 and 14).

**SENTENCE OR PROBATION ORDER**

**SPECIAL CONDITIONS OF PROBATION**

The court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary
was shown, or appeared to the court, the court adjudged the defendant guilty as charged and convicted and ordered that: The defendant is
hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of    two years
on Count 2.  The confinement sentence on Count 2 is to run concurrently
with the sentence previously imposed in the U. S. District Court, Eastern
District of New York in Case Number 87-CR-423(SS)-2.  It is further
ordered the defendant is sentenced to five years' incarceration on Count
14, to run consecutively to the sentence imposed on Count 2, execution of
the sentence on Count 14 is hereby suspended and the defendant is placed
on probation for a period of five years to begin upon release from
confinement upon the usual terms and conditions of probation and the
following special conditions of probation:  1.  Defendant fulfill the
restitution agreement as stipulated in the Confession of Judgment filed
in the District of Kansas Civil RICO cases 85-2216-O and 89-2094-O and as
included in the amended plea agreement filed in this Court.  2.
Defendant cooperate with the appropriate investigation authorities at the
(Continued on next page)

**ADDITIONAL CONDITIONS OF PROBATION**

In addition to the special conditions of probation imposed above, it is hereby ordered that the general conditions of probation set out on the
reverse side of this judgment be imposed. The Court may change the conditions of probation, reduce or extend the period of probation, and
at any time during the probation period or within a maximum probation period of five years permitted by law, may issue a warrant and
revoke probation for a violation occurring during the probation period.

**COMMITMENT RECOMMEN- DATION**

The court orders commitment to the custody of the Attorney General and recommends,

APPROVED: _____
Lloyd B. Monroe, Jr.
U. S. Department of Justice

It is ordered that the Clerk deliver
a certified copy of this judgment
and commitment to the U.S. Mar-
shal or other qualified officer.

**SIGNED BY**

[X] U.S. District Judge

[ ] U.S. Magistrate

MARIO RENDA
JUDGMENT AND PROBATION/COMMITMENT ORDER: (Continued)

direction of the U. S. Probation Office pursuant to the Confession c
Judgment filed in the District of Kansas Civil RICO cases 85-2216-O an
89-2094-O and as included in the amended plea agreement filed in thi
Court. 3. The defendant is to pay all back taxes, interest an
penalties due the Internal Revenue Service at the direction of the U. S
Probation Office. Pursuant to 18 U.S.C. 3013, the defendant is assesse
$50.00 on each count (total $100) to be paid to the Crime Victims Fun
through the Clerk, U. S. District Court. The Court finds by clear an
convincing evidence the defendant is not a flight risk and does not pos
a danger to the safety or financial well-being of others in the communit
at the present time. Therefore, the Court permits the defendant t
surrender to the designated institution no later than 2:00 p.m. on May 1
1989. Counts 1, 3-13, 15-30 of the Indictment filed June 10, 1987, a
they pertain to this defendant, are dismissed on motion of th
government.

## UNITED STATES DISTRICT COURT

### DISTRICT OF KANSAS

United States v. Mario Renda_____    Docket No.: 87-20049-01_____

In accordance with 18 U.S.C. 3612(b)(1), if a fine or assessmen
has been ordered but is not paid immediately, the defendant is require
to notify the U. S. Attorney of any change in address within thirty (3C
days of that change until such financial obligation is paid in full.

Defendant's Name:            Mario Renda_____

Defendant's Social Security No.: ██████████_____

Defendant's Residence Address:   46 2nd Street_____

                 Garden City, NY 11530_____

                 _____

Defendant's Mailing Address:   13330 Paseao Del Verando Norte

(if different)          San Diego, CA  92128_____

                 (AS OF MAY 1, 1989)_____

# EXHIBIT "2"

*669 F. Supp. 1544, *; 1987 U.S. Dist. LEXIS 8307, **

United States of America, Plaintiff, v. Mario Renda, Franklin A. Winkler, V. Leslie Winkler, Sammy G. Daily and Frederick Figge, Defendants

Nos. 87-20049-01

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

669 F. Supp. 1544; 1987 U.S. Dist. LEXIS 8307

August 12, 1987, Decided
August 12, 1987, Filed

## CASE SUMMARY:

**PROCEDURAL POSTURE:** The prosecution moved to disqualify the counsel of choice of defendant and codefendant, in a complex criminal case that involved over 30 counts against five defendants, because of an alleged conflict of interest occasioned by the attorney's representation of defendant in a pending civil bankruptcy proceeding that was related to the subject matter of the criminal case.

**OVERVIEW:** The prosecution arose from an alleged scheme by defendant and codefendant to fraudulently place deposits, borrow funds, and create false loan statements at several banks. The prosecution moved to disqualify the attorney chosen by defendant and codefendant because the attorney represented defendant in a pending civil bankruptcy proceeding, and defendant's testimony allegedly inculpated codefendant consistent with the government's theories of wire fraud, conspiracy, and false statements. Defendant and codefendant opposed the motion and denied that any conflict of interest existed. The court held that disqualification of defense counsel was not warranted. After the magistrate and the court conducted in-depth examinations of the range of possible conflicts of interest, neither counsel, defendant, nor codefendant believed that a conflict was foreseeable. Both defendant and codefendant were well-educated professionals with judicial experience who strongly desired joint representation. The court found no basis to override their voluntary, knowing, and intelligent waivers of their right to independent counsel, and concluded that joint representation was constitutionally required.

**OUTCOME:** The court denied the prosecution's motion to disqualify counsel for defendant and codefendant in criminal proceedings alleging fraud. The court ordered defendants to prepare a written waiver of their right to separate counsel.

**CORE TERMS:** joint representation, conflict of interest, assistance of counsel, waive, counsel of choice, disqualification, criminal case, actual conflict, right to counsel, separate counsel, disqualify, jointly, bankruptcy proceeding, advisory committee's, potential conflict, administration of justice, defense counsel, intelligently, personally, knowingly, advise, case law, adversely affected, intelligent waiver, full disclosure, societal interests, co-defendants, intelligent, precautions, narrative

## LEXISNEXIS(R) HEADNOTES
Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Assistance

of Counsel
Criminal Law & Procedure > Counsel > Joint Representation
Criminal Law & Procedure > Counsel > Right to Counsel > General Overview

*HN1* ⚓ Fed. R. Crim. P. 44(c) provides in part that whenever two or more defendants have been jointly charged pursuant to Fed. R. Crim. P. 8(b) or have been joined for trial pursuant to Fed. R. Crim. P. 13 and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Assistance of Counsel
Criminal Law & Procedure > Counsel > Joint Representation
Criminal Law & Procedure > Counsel > Substitution & Withdrawal

*HN2* ⚓ Requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel. Couched against this right to counsel of choice is the right to a criminal defense conducted by an attorney who is free from conflicts of interest. Disqualification should be a measure of last resort and the government bears a heavy burden of establishing that disqualification is justified. In the event that the trial court is able to determine that no conflict is likely to arise, Fed. R. Crim. P. 44(c) dictates that the court need not take any other precautions or measures and the defendants may then proceed to trial jointly represented by counsel. Of course, a court can only rarely, if ever, find as a matter of law that no conflict is possible in the representation of two criminal defendants. To the extent that the trial judge is not fully apprised of the details of the case and the facts and circumstances to be drawn therefrom, it is unrealistic to believe that an accurate prediction concerning a conflict of interest can be made with any degree of certainty. There is always a possibility of prejudice that inheres in almost every instance of multiple representation. The court may and should, however, determine whether the conflict is too remote to warrant separate counsel.

Criminal Law & Procedure > Counsel > Joint Representation
Criminal Law & Procedure > Counsel > Substitution & Withdrawal
Legal Ethics > General Overview

*HN3* ⚓ Only in unique circumstances can a court disqualify counsel over the defendants' objection when the sole basis for disqualification is a potential for a conflict of interest of which both defendants are aware. An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Of course, the trial court has the discretion and the duty to make further inquiry even if counsel assures the court that no conflict exists. In the absence of a determination that an actual conflict exists, joint representation can be permitted provided that certain other precautions are taken. The waiver of the right to counsel must not only be voluntary, but must also be knowing and intelligent, with sufficient awareness of the relevant circumstances and likely consequences. If the trial judge specifically admonishes the defendants of the potential for future conflict and the defendants knowingly, intelligently and voluntarily waive the right of separate representation, the law requires nothing more and the waiver will insulate a conviction from later attack.

Criminal Law & Procedure > Counsel > Joint Representation
Criminal Law & Procedure > Counsel > Right to Counsel > General Overview
Criminal Law & Procedure > Trials > Defendant's Rights > Right to Counsel > General
Overview

*HN4* The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Beyond the sixth amendment right to counsel of choice, the court believes that other factors can weigh in favor of permitting codefendants to waive their right to separate representation. First, in many cases, a common defense gives strength against a common attack. In some cases, multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. Second, the court should be extremely careful not to let the government's attempted disqualification of defense counsel transform the sixth amendment right to conflict-free counsel into a two-edged sword with which the government would be able to sever defendants from those most able to protect their legitimate legal interests. The court may have to reach out and protect the defendants from themselves when, under all the circumstances, the court finds that the balance of the interests involved require disqualification. Additionally, obtaining a waiver from defendants and entering an initial order permitting joint representation may not end the court's supervision over the matter.

**COUNSEL:** [**1] Lloyd B. Monroe, Jr., for Plaintiff.

Ronald G. Russo, James R. Wyrsch, for Defendants.

**JUDGES:** Dale E. Saffels, United States District Judge.

**OPINION BY:** SAFFELS

**OPINION**

[*1545]  DALE E. SAFFELS, United States District Judge.

MEMORANDUM AND ORDER

In this criminal case, the United States has moved to disqualify the counsel of choice of defendants Daily and Figge, attorney Steven M. Dickson, because of an alleged conflict of interest. The prosecution contends that attorney Dickson represents defendant Figge in a pending civil bankruptcy proceeding that is related to the subject matter of this criminal case and that at a hearing in the bankruptcy proceeding, Figge gave testimony that tended to inculpate defendant Daily and exculpate Figge. The government strenuously argues that this testimony establishes an actual conflict of interest between defendants Daily and Figge such that joint representation of the two by common counsel would violate the defendants' sixth amendment right to effective assistance of counsel. The court conducted a hearing on this matter on August 6, 1987, and is prepared to rule on this matter.

A general summary of the facts of this case will suffice. This prosecution arises out of an alleged scheme by the defendants to place deposits at several banking institutions by fraudulent [**2] means and then borrow funds from these same institutions by fraudulent

loan statements, coupled with a scheme to disguise the true beneficiaries of the loaned money. The government argues at length that testimony given by defendant Figge at a bankruptcy proceeding in California, *Federal Deposit Insurance Corp. v. Figge*, No. LA85-2416-LH (Bankr. C.D. Cal. June 4, 1987) (transcript of testimony of Frederick A. Figge) directly inculpates defendant Daily in conduct consistent with the government's theory of wire fraud, conspiracy, and false statement charges against Daily. The prosecution also alleges that Figge's testimony tends to insulate himself from the alleged criminal activity. The government has detailed this testimony and its alleged incriminatory effect both in its brief and at the oral hearing, and it has provided the court with a transcript of the entire testimony of defendant Figge. Attorney Dickson represented defendant Figge at the bankruptcy proceeding. Defendants deny that any conflict of interest exists and state that they desire to continue being jointly represented by attorney Dickson.

The issue now before the court arises in practically every criminal case involving **[\*\*3]** joint representation of two or more defendants, as is evidenced by the legion of relevant cases. The starting point is *HN1* Federal Rule of Criminal Procedure 44(c), which addresses the right to and assignment of counsel:

> (c) Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have **[\*1546]** been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The notes of the Advisory Committee concerning this 1979 amendment to the Rules establish the following general guidelines:

> (1) When a potential conflict arises such as in the case of the same counsel having been retained by co-defendants in a criminal case, the trial judge **[\*\*4]** should conduct a hearing to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment.

> (2) Avoiding a conflict-of-interest situation is in the first instance a responsibility of the attorney. However, even the most diligent attorney may be unaware of facts giving rise to a potential conflict, so it is not enough to rely merely on counsel in making a determination concerning a conflict of interest.

> (3) Even if the court determines that an actual conflict is not apparent, it is important that the trial judge ascertain whether the effective and fair administration of justice would be adversely affected by continued joint representation.

> (4) It is appropriate to leave the particular measures to be taken within the court's discretion, for the measures that will best protect each defendant's right to counsel may well vary from case to case. One possible course of action is for the court to obtain a knowing, intelligent and voluntary waiver of the right to separate representation. Utilization of the following procedure is approved:

> As **[\*\*5]** in Rule 11 procedures, the district court should address

each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." . . . . Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloque [sic] between defendant **[**6]** and judge, will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

(5) Even after following all of the above-described precautions, giving full disclosure and obtaining consent of the client may not be adequate protection. The trial judge may be compelled to find that the waiver cannot be intelligently made simply because it is impossible to inform the defendant of the foreseeable prejudices that joint representation might entail. The defendant's right to sixth amendment effective representation, even in the face of a waiver of that right, might sometime outweigh his more limited right of counsel of choice.

**[*1547]** (6) Finally, even if the trial judge accepts a waiver and permits joint representation initially, the court is not relieved of all responsibility in this regard. The obligation placed upon the court by Rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest.

These comments were drafted **[**7]** in connection with the 1979 amendment, and they incorporated contemporary case law. Subsequent decisions shed further light concerning joint representation of criminal defendants and the sixth amendment right to effective assistance of counsel. The court will address some of the recent case law in light of the Advisory Comment to Rule 44(c).

I. GENERAL CONSIDERATIONS IN JOINT REPRESENTATION CASES

The United States Supreme Court has recently reiterated that *HN2* "requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel.'" *Burger v. Kemp*, 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 482, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978)). The Court continued: "We have never held that the possibility of prejudice that 'inheres in almost every instance of multiple representation' justifies the adoption of an inflexible rule that would

presume prejudice in all such cases." *Burger*, 107 S. Ct. at 3120. In fact, "the sixth amendment right to counsel of choice 'reflects constitutional protection of the defendant's free choice independent of concern for the objective **[**8]** fairness of the proceedings.'" *United States v. Diozzi*, 807 F.2d 10, 16 (1st Cir. 1986) (quoting *United States v. Flanagan*, 465 U.S. 259, 268, 79 L. Ed. 2d 288, 104 S. Ct. 1051 (1984)). *See also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 443, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985) (Stevens, J., dissenting) ("In a criminal case an erroneous order disqualifying the lawyer chosen by the defendant should result in a virtually automatic reversal . . . ."). Couched against this right to counsel of choice is the right to a criminal defense conducted by an attorney who is free from conflicts of interest. *See United States v. Wheat*, 813 F.2d 1399, 1401 (9th Cir. 1987). This obviously puts the trial court in the position of balancing two concerns while knowing that denial of either of these may result in an appeal assigning the ruling as reversible error. *Id*. Yet disqualification should be a measure of last resort, and the government bears a heavy burden of establishing that disqualification is justified. *Diozzi*, 807 F.2d at 12.

## II. DETERMINATION OF CONFLICT

In the event that the trial court is able to determine that "no conflict is likely to arise," Rule 44(c) dictates that the court **[**9]** need not take any other precautions or measures, and the defendants may then proceed to trial jointly represented by counsel. Of course, a court can only rarely, if ever, find as a matter of law that *no* conflict is possible in the representation of two criminal defendants. To the extent that the trial judge is not fully apprised of the details of the case and the facts and circumstances to be drawn therefrom, it is unrealistic to believe that an accurate prediction concerning a conflict of interest can be made with any degree of certainty. There is always a possibility of prejudice that "inheres in almost every instance of multiple representation." *Burger*, 107 S. Ct. at 3120. The court may (and should), however, determine whether the conflict is too remote to warrant separate counsel. *Wheat*, 813 F.2d at 1403 (citing *Holloway*, 435 U.S. at 484). *HN3* Only in unique circumstances can a court disqualify counsel over the defendants' objection when the sole basis for disqualification is a *potential* for a conflict of interest of which both defendants are aware. *United States v. Cirrincione*, 780 F.2d 620, 628 (7th Cir. 1985).

In regard to determining whether a conflict exists, **[**10]** the Supreme Court recently **[*1548]** stated: "We generally presume that the lawyer [for defendants] is fully conscious of the overarching duty of complete loyalty to his or her client. Trial courts appropriately and 'necessarily rely in large measure upon the good faith and good judgment of defense counsel.'" *Burger*, 107 S. Ct. at 3120 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980)). "An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Holloway*, 435 U.S. at 485. *See also Cuyler*, 446 U.S. at 346 (defense counsel's ethical duty to avoid conflicting representations and to advise the court when conflict arises during course of trial). Of course, the trial court has the discretion (and the duty) to make further inquiry even if counsel assures the court that no conflict exists. *See Wheat*, 813 F.2d at 1403. "Because the conflicts are often subtle it is not enough to rely upon counsel, who may not be totally disinterested.'" *Id*. (quoting *United States v. Lawriw*, 568 F.2d 98, 104 (8th Cir. 1977), cert. denied, **[**11]** 435 U.S. 969, 56 L. Ed. 2d 60, 98 S. Ct. 1607 (1978)).

The court finds that in the absence of a determination that an actual conflict exists, joint representation can be permitted provided that certain other precautions are taken, as discussed below. *See Burger*, 107 S. Ct. 3114 (discussing fact that as to post-trial remedy, court will presume prejudice to defendants only if an actual conflict of interest adversely affected lawyer's performance). *But see Wheat*, 813 F.2d at 1404 ("In the Sixth Circuit even where there is an *actual* conflict, a trial court should override a defendant's knowing waiver only in 'compelling circumstances.'" (emphasis added) (quoting *United States v. Reese*, 699 F.2d 803, 805 (6th Cir. 1983)).

## III. WAIVER

As was previously mentioned, the court may permit criminal defendants to waive their sixth amendment right of effective assistance of counsel and individual representation when no actual conflict is readily ascertainable. The Tenth Circuit has approved the following procedure employed by one trial court in complying with Rule 44(c) and ensuring that the defendants knowingly and intelligently waive their right to separate counsel:

> (1) The United States Magistrate personally questions both defendants. **[\*\*12]**

> (2) The defendants sign a statement "that they are familiar with [Rule 44(c)], familiar with the facts in the case, and that they are of the opinion that there is no conflict of interest in the joint representation, and that's the way they want it."

> (3) The trial court again advises both defendants of their right to separate counsel at a motions hearing.

> (4) The trial court has both defendants sign and file with the court a Waiver of Right to Have Separate Counsel. In this written Waiver, the defendants should declare

>> (a) that they have been provided with a copy of Rule 44;

>> (b) that they have been advised by the magistrate (or district judge) in open court of the provisions of Rule 44;

>> (c) that they know of possible conflicts of interest that might arise during trial;

>> (d) that one defendant could testify against the other defendant and such testimony might be harmful; and

>> (e) that each has been fully advised of these potential conflicts by both the court and their attorney, and they still choose to be represented by a single attorney.

*United States v. Dressel*, 742 F.2d 1256, 1258-59 (10th Cir. 1984).

The waiver of the right to counsel must not only be voluntary, but must also **[\*\*13]** be knowing and intelligent, with sufficient awareness of the relevant circumstances and likely consequences. *United States v. Akinseye*, 802 F.2d 740, 745 (4th Cir. 1986) (quoting *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 90 S. Ct. 1463 **[\*1549]** (1970), *cert. denied*, 482 U.S. 916, 107 S. Ct. 3190, 96 L. Ed. 2d 678 (1987)). If the trial judge specifically admonishes the defendants of the potential for future conflict and the defendants knowingly, intelligently and voluntarily waive the right of separate representation, the law requires nothing more, *United States v. Williams*, 809 F.2d 1072, 1085 (5th Cir. 1987), and the waiver will insulate a conviction from later attack. *United States v. Flanagan*, 679 F.2d 1072, 1076 (3d Cir. 1982), *rev'd on other grounds*, 465 U.S. 259, 79 L. Ed. 2d 288, 104 S. Ct. 1051 (1984). The standard for measuring an effective waiver of a constitutional right such as effective assistance of counsel is as follows:

A waiver is ordinarily an intentional relinquishment or abandonment of a known

right or privilege. HN4⌖The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, **[**14]** and conduct of the accused.

*United States v. Cirrincione*, 780 F.2d 620, 624 (7th Cir. 1985) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938)).

Beyond the sixth amendment right to counsel of choice, the court believes that other factors can weigh in favor of permitting co-defendants to waive their right to separate representation. First, "in many cases a 'common defense . . . . gives strength against a common attack.'" *Burger*, 107 S. Ct. at 3120 (quoting *Glasser v. United States*, 315 U.S. 60, 92, 86 L. Ed. 680, 62 S. Ct. 457 (1942) (Frankfurter, J., dissenting)). The Fourth Circuit expanded somewhat on Justice Frankfurter's view as expressed in *Glasser*: "In some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: 'Joint representation is a means of insuring against reciprocal recrimination.'" *Hodge v. Reeves*, 803 F.2d 713 (4th Cir. 1986) (table, text in Westlaw) (quoting *Glasser*, 315 U.S. at 92). The Tenth Circuit has also recognized that when two defendants' interests are closely aligned, their united front strategy might be the best strategy available. **[**15]** *United States v. Burney*, 756 F.2d 787, 793 (10th Cir. 1985).

Second, the court should be extremely careful not to let the government's attempted disqualification of defense counsel "transform the sixth amendment right to conflict-free counsel into a two-edge sword with which the government would be able to sever defendants from those most able to protect their legitimate legal interests." *In re Paradyne Corp.*, 803 F.2d 604, 611 (11th Cir. 1986). In an extremely complicated case it may cause a fundamental injustice to remove the *one* attorney whose intimate knowledge of the defense and whose close relationship with the defendants make him practically the only available attorney capable of presenting effective assistance of counsel.

The court is ever mindful that even if all of the previously defined criteria support permitting waiver and joint representation, there are still other considerations that the trial court must examine. The Eleventh Circuit effectively summarized one of these:

> The right to counsel of one's choice is not absolute. The right does not override the broader societal interests in the effective administration of justice . . . . or in the maintenance of "public **[**16]** confidence in the integrity of our legal system." . . . . But the right yields only to broader societal interests: it cannot be denied by a court unilaterally as a means to protect other sixth amendment rights of a defendant. The Constitution grants defendants the prerogative of choosing, knowingly and voluntarily, the right to retain chosen counsel over the right to effective representation free from conflict of interest.

*In re Paradyne Corp.*, 803 F.2d at 611 n.16 (citations omitted). *See also Diozzi*, 807 F.2d at 12 (district court has some discretion to limit the exercise of the right to counsel of choice when insistence upon it would interfere with the orderly administration **[*1550]** of justice). The court may have to reach out and protect the defendants from themselves when, under all the circumstances, the court finds that the balance of the interests involved require disqualification. *See Dressel*, 742 F.2d at 1258: "Notwithstanding the trial court's compliance with all of the suggested procedures to ensure that any waiver is fully informed and voluntary, under some circumstances 'even full disclosure and consent . . . may not be an adequate protection.'" (Quoting Fed. R. Crim. **[**17]** P. 44(c) advisory committee's note).

Additionally, obtaining a waiver from defendants and entering an initial order permitting joint

representation may not end the court's supervision over the matter. The courts have followed the advisory committee's dictate that the obligation placed upon the court by Rule 44(c) is a continuing one, and in a particular case further inquiry may be necessary at a later occasion because of new developments suggesting a potential conflict of interest. *Akinseye*, 802 F.2d at 745 n.3. *But see United States v. Smith*, 778 F.2d 925, 930 (2d Cir. 1985) ("There is no requirement that parties who receive adequate pretrial warnings on the dangers of joint representation be warned again after the trial begins.") The *Akinseye* court suggested that the better practice is for the trial court to conduct further Rule 44(c) inquiry when the defendants take the stand and, if necessary, obtain a further waiver, a recommendation based mainly on the belief that it is impossible at the pre-trial stage to describe in full detail the conflicts that may arise during the trial. *Id*. at 745-56. Several courts have suggested that the trial judge can never fully **[**18]** explain to a defendant all of the permutations and combinations of circumstances of the evidence to be presented. *United States v. Agosto*, 675 F.2d 965, 976 (8th Cir.), *cert. denied*, 459 U.S. 834, 103 S. Ct. 77, 74 L. Ed. 2d 74 (1982); *United States v. Montevecchio*, 645 F. Supp. 497, 499 (W.D. Pa. 1986).

IV. APPLICATION TO PRESENT FACTS

The court finds that after a careful review of the authority cited above and the facts of this case in their present light, disqualification of defense counsel is not warranted. The court believes that the following particulars support this finding.

(A) *Procedures Employed to Date*

When the issue of a possible conflict of interest first arose during the Omnibus Hearing in this case, Magistrate Gerald Rushfelt conducted oral examination of each of the defendants and obtained the following representations from them after informing them of the possibility of danger arising from joint representation: (1) the two defendants discussed with attorney Dickson the implications and risks arising from his representing both of them; (2) the two defendants discussed this possibility among themselves; (3) neither of them were under the influence of any drugs or alcohol **[**19]** and both fully understood the nature of the court's questioning; (4) they understood that joint representation can affect the attorney's independent investigation in support of each of the defendant's cases; (5) they understood that joint representation may inhibit or prevent independent plea negotiations, particularly in terms of negotiating immunity or sentencing recommendations in exchange for testimony against the other defendant; (6) they understood that the attorney-client privilege might prevent the attorney from communicating information gathered from one defendant to the other; (7) they understood that joint representation might affect the attorney's decision as to whether a jury trial should be waived by one or both of them; (8) they understood that the attorney's use of peremptory challenges to the jury might be affected; (9) they understood that joint representation might prevent the attorney from challenging the admission of evidence which may be favorable to one of them but prejudicial to the other; (10) they understood that the attorney might be inhibited from introducing evidence that might be favorable to one but not the other; (11) they understood that the decision **[**20]** of whether either, both or neither of them should testify might be adversely affected; **[*1551]** (12) they understood that the attorney's ability to fully cross-examine the government's witnesses on the same tactical or strategical route might be inhibited; (13) they understood that the attorney would be prohibited from placing the blame on either one of them during final argument; (14) they understood that if convicted, the ability of the attorney to engage in post-trial negotiations with the government concerning full disclosure by one defendant against the other would be prohibited; (15) they understood that during the sentencing procedure joint representation would prevent the attorney from arguing the relative culpability of the two. Furthermore, the Magistrate strongly recommended that the defendants not be jointly represented. The Magistrate informed the defendants that a court-appointed counsel was available. Finally, the Magistrate elicited a narrative response from attorney Dickson on how he intended to address and resolve these potential problems with

the defendants. At the end of the examination, the Magistrate was satisfied that each of the defendants fully understood the implications **[**21]** and risks and voluntarily opted to waive any objection concerning a conflict of interest.

The government subsequently filed a formal motion to disqualify attorney Dickson based on its perception of a conflict of interest as demonstrated by defendant Figge's testimony in the California bankruptcy matter. At the oral hearing on this motion, counsel for the government stated the prosecution's objection to joint representation and quoted at length from the transcript of defendant Figge's prior testimony those passages that the prosecution claims establish an actual conflict of interest. The quoted material dealt with defendants Figge's and Daily's joint participation in a business enterprise and included statements that, when viewed without context, might lead one to perceive the possible implication of Daily in some unethical (though not necessarily illegal) business practices.

Defendant's attorney then proceeded to inform the court that neither he nor his clients recognized the joint representation as implicating even a recognizable possibility of a conflict of interest. While conceding that the potential is always there in a joint representation case (as the case law establishes), **[**22]** neither counsel nor the defendants presently believed that a conflict was foreseeable. Furthermore, attorney Dickson essentially repeated the following statement made earlier to the Magistrate:

> Representation of both of these gentlemen is not new to this criminal case. I represent them both in companion civil cases involving the same facts. The facts are voluminous, the amount of evidence enormous, the Court is certainly aware of the amount of work that has been put in by myself in the civil case and the amount of time that's been involved in learning these facts.

Counsel stated that the testimony of Figge in the bankruptcy matter did not incriminate Daily and that the only conduct mentioned by Figge did not involve a violation of the law.

The court then questioned defendants Daily and Figge in open court. It first obtained the educational levels attained by each. They both had masters degrees in engineering and had achieved outstanding academic and professional records. They both had been in court previously and had experience with the courts and the judicial processes. * The court went through essentially the same in-depth examination of the range of possible conflicts of interest **[**23]** that the magistrate addressed, after which the defendants repeated their strong desire to have attorney Dickson jointly represent them.

**FOOTNOTES**

* The court is well aware that even the most complete educational background and experience does not necessarily assume an intelligent waiver. One court has noted that even a defendant who was an experienced trial lawyer and had served four years as an Assistant United States Attorney prosecuting criminal cases may fail to validly waive his rights. See United States v. Montevecchio, 645 F. Supp. 497, 499 (W.D. Pa. 1986) (discussing Glasser v. United States, 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942)).

(B) Nature of the Litigation

This criminal case involves over 30 counts against five defendants. It concerns **[*1552]** intricate and involved business transactions over an extended period of time. The trial itself is scheduled to require over 40 days of trial time and has already been declared by this court (upon motion of the defendants and acquiescence of the government) as a complex case under 18 U.S.C. § 3161(h)(8)(B)(ii). There is no doubt in this court's mind that due to

attorney Dickson's previous and continuing representation of both of these defendants through **[\*\*24]** civil and criminal proceedings, he is the only attorney reasonably capable of giving each and both of these defendants truly effective assistance at trial. The court has never been presented with a better case for joint representation. It is evident that the defendants are pursuing a common defense against the prosecution and that coordination of such a defense can only be handled through common representation.

(C) *Foreseeability of a Conflict of Interest*

Recognizing the scope of the case that has been presented to the court to date and regarding the evidence submitted by the prosecution in bringing the present motion, the court does not believe that anything more than a speculative conflict of interest now exists. The bankruptcy court testimony of defendant Figge certainly does not implicate defendant Daily in the manner argued by the government. As far as the court can now determine, this testimony is nothing more than consistent with the defendants' common view of the facts of the case. Certainly, defendant Daily listened to each allegedly inculpatory statement made by defendant Figge and proceeded to inform the court that no conflict exists. The court does not have any **[\*\*25]** basis to believe otherwise. The court intends to closely monitor this case, however, and at the first sign of a conflict, be it at a hearing or at trial or otherwise, the court will forthwith conduct an inquiry into the matter and take appropriate protective measures consistent with the law summarized in this Memorandum and Order.

(D) *Knowing, Voluntary and Intelligent Waiver*

The court finds that these defendants, both of whom have masters degrees and both of whom appeared before this court as perhaps the most intelligent and informed criminal defendants with whom the court has ever become acquainted, are familiar with the legal processes involved in this criminal action, are aware of the gamut of potential conflicts that might arise through joint representation, are completely informed as to what the government views as testimony establishing a conflict of interest, and have voluntarily, knowingly and intelligently waived their right to independent counsel. Simply put, these men have been harped upon about the enormous danger of joint representation and despite all of the rhetoric, they *both* want attorney Dickson to represent them *both*. The court has perceived no coercion

# EXHIBIT "3"

1  **SAMPSON & ASSOCIATES**
2  Bryan D. Sampson, Esq. (#143143)
   Mary L. Fickel, Esq. (#221872)
3  2139 First Avenue
   San Diego, California 92101
4  Tel. (619) 557-9420 / Fax (619) 557-9425
   bsampson@sampsonlaw.net
5
   Attorneys for Judgment Creditor
6  AIRLINES REPORTING CORPORATION

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO, CENTRAL DIVISION**

10 | AIRLINES REPORTING CORPORATION, | Case No. GIC865200 |

11 | Plaintiff/Judgment Creditor, | **JUDGMENT CREDITOR'S DEMAND FOR** |

12 | | **PRODUCTION OF DOCUMENTS TO** |
   | v. | **JUDGMENT DEBTOR MARIO RENDA** |

13

14 | MCCORD CONSUMER DIRECT, INC. dba A | [C.C.P. §§708.010 & 708.030] |
   | BETTER AIRFARE; MARIO RENDA; |

15 | ROBERT KREMER; SHANNON PATTEE, | Date:  N/A |
   | | Time:  N/A |

16 | Defendants/Judgment Debtors. | Dept.: 25 |
   | | Judge: Hon. Eugenia A. Eyherabide |

17

18 **PROPOUNDING PARTY:  AIRLINES REPORTING CORPORATION**

19 **RESPONDING PARTY:    MARIO RENDA**

20 **SET NO.:**                    **ONE**

21         Pursuant to Code of Civil Procedure Sections 708.010 and 708.030, Judgment Creditor requests

22 that Judgment Debtor identify and produce the following documents and tangible things and permit the

23 inspection, photographing, or copying of them at the offices of Sampson & Associates, located at 2139

24 First Avenue, San Diego, CA 92101, at 10:00 a.m., within thirty (30) days from the date of service,

25 which period is extended by five (5) days where service was made by mail.

26         You are also required to serve a written response under oath within thirty (30) days after service

27 of this demand for inspection, which period is extended by five (5) days where service was made by

28 mail, you shall serve the original of your response to the demand for production and inspection of

1

*SAMPSON & ASSOCIATES*
*ATTORNEYS AT LAW*
*2139 FIRST AVENUE*
*SAN DIEGO, CALIFORNIA 92101*
*TELEPHONE (619)557-9420 - FACSIMILE (619)557-9425*

1  documents and other tangible things on the party making the demand.  You shall respond separately to

2  each item or category by a statement that you will comply with the particular demand for inspection and

3  any related activities, a representation that you lack the ability to comply with the demand for inspection

4  of a particular item or category, or an objection to the particular item.  You shall sign the responses under

5  oath unless the response contains only objections.  If you are a public or private corporation or

6  partnership or association or governmental agency, one of your officers or agents shall sign the response

7  under oath on your behalf.  The response should comply fully with Code of Civil Procedure §2031.

8      If the production of the requested documents is not completed on the aforementioned date, the

9  production thereof will be continued from day-to-day thereafter at the same time and place, Saturdays,

10  Sundays and Holidays excluded, until completed, and in the event of any scheduling conflict of the

11  person designated to so produce the documents, parties or counsel, then to the earliest mutually

12  convenient date, time and location as agreed to.

## INSTRUCTIONS

13

14  1.      In producing documents and things, you are requested to furnish all documents or things

15  in your possession, custody or control or known or available to you regardless of whether such

16  documents or things are possessed directly by you or your agents, employees, representatives, or

17  investigators, or by your attorneys or their agents, employees, representatives or investigators.

18  2.      All documents should be produced in the same order as kept or maintained by you.

19  3.      If you claim that the attorney-client privilege or any other privilege is applicable to any

20  documents, that document(s) need not be produced but, with respect to that document(s):

21      a.      State the date of the document;

22      b.      Identify each and every author of the documents;

23      c.      Identify each and every other person who prepared or participated in the

24      preparation of the document;

25      d.      Identify each and every person from whom the document was received;

26      e.      State the present location of the document and all copies thereof;

27      f.      Identify each and every person having custody or control of the document and all

28      copies thereof; and

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 - FACSIMILE (619)557-9425

2
DEMAND FOR PRODUCTION OF DOCUMENTS

1        g.      Provide sufficient further information o the document and all copies thereof to

2    explain the claim or privilege and to permit adjudication of the propriety of the claim.

3        4.    If you contend that any production of the documents or tangible things requested would

4    be burdensome, state with specificity the quantity of documents which would be responsive, the location,

5    and the precise grounds upon which you contend that production would be burdensome.

6        5.    If any document or tangible things described in this request was, but no longer is, in your

7    possession, subject to your custody or control, or in existence, state:

8        a.    Whether it is missing or lost;

9        b.    Whether it has been destroyed;

10       c.    Whether it has been transferred, voluntarily or involuntarily, to others;

11       d.    Whether it has been disposed of in some other manner;

12       e.    What efforts have been made to locate that item including the names and

13   addresses of each person contacted regarding the item, or known to have or known to

14   have had possession at the time;

15       f.    The location of the item;

16       g.    The person who has possession, custody or control of the item;

17       h.    Whether the location of the items is known to you;

18       I.    Whether the identity of the person who has possession or control of the item is

19   known to you;

20       j.    The circumstances surrounding such disposition and identify the person(s)

21   directing or authorizing the same, and the dates) thereof; and

22       k.    The identity of the author or producer, his, her or its address, type (e.g., letter,

23   memorandum, photograph, etc.) date and the subject matter.

**DOCUMENTS TO BE PRODUCED**

24

25   **REQUEST FOR PRODUCTION NO. 1:**

26   Please provide your Social Security card.

27   **REQUEST FOR PRODUCTION NO. 2:**

28   Please provide your birth certificate.

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
139 WEST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 - FACSIMILE (619)557-9425

3

DEMAND FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 3**:

Please provide all of your marriage certificates.

**REQUEST FOR PRODUCTION NO. 4**:

Please provide all of your identification cards, including but not limited to your driver's licenses, passports, or other cards, whether in your name or any alias name used by you.

**REQUEST FOR PRODUCTION NO. 5**:

Please provide current vehicle registrations for all of your automobiles, including but not limited to automobiles maintained at your personal residence, and automobiles that you drive or insure.

**REQUEST FOR PRODUCTION NO. 6**:

Please provide your mortgage invoices from lenders on your personal residence during the past two years.

**REQUEST FOR PRODUCTION NO. 7**:

Please provide canceled checks in your possession used to pay the mortgage on your personal residence during the past two years.

**REQUEST FOR PRODUCTION NO. 8**:

Please provide all insurance policies currently in effect on your personal residence.

**REQUEST FOR PRODUCTION NO. 9**:

Please provide all current insurance policies on vehicles driven by you or your immediate family members.

**REQUEST FOR PRODUCTION NO. 10**:

Please provide all deeds to real property, wherever located currently in your possession.

**REQUEST FOR PRODUCTION NO. 11**:

Please provide your most recent inventory of personal property, including but not limited to personal property at your residence or located anywhere else.

**REQUEST FOR PRODUCTION NO. 12**:

Please provide your current insurance policy covering personal property, including but not limited to personal property in your residence.

///

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 – FACSIMILE (619)557-9425

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 • FACSIMILE (619)557-9425

**REQUEST FOR PRODUCTION NO. 13:**

Please provide your current will.

**REQUEST FOR PRODUCTION NO. 14:**

Please provide any and all existing trusts established by you.

**REQUEST FOR PRODUCTION NO. 15:**

Please provide the original stock certificates for any and all stocks held in your or your family's name.

**REQUEST FOR PRODUCTION NO. 16:**

Please provide original registrations for any and all vessels in your possession, including but not limited to boat, airplane, or other vehicles.

**REQUEST FOR PRODUCTION NO. 17:**

Please provide any and all membership documents held by you, including but not limited to golf club memberships, yacht club memberships or other types of memberships for the past two years.

**REQUEST FOR PRODUCTION NO. 18:**

Please provide statements from all financial institutions where you are conducting financial transactions, including but not limited to deposit accounts, loans, stocks, securities, bonds, mutual funds, options and safe deposit boxes for the past five years.

**REQUEST FOR PRODUCTION NO. 19:**

Please provide all agreements identifying safe deposit boxes held for you in a financial institution.

**REQUEST FOR PRODUCTION NO. 20:**

Please provide all signatory cards to deposit accounts upon which you are a signatory.

**REQUEST FOR PRODUCTION NO. 21:**

Please provide all letters of credit in your possession.

**REQUEST FOR PRODUCTION NO. 22:**

Please provide all savings account information, including but not limited to your last statements for any IRA's, KEOUGH accounts or retirement pension funds for the past five years.

///

DEMAND FOR PRODUCTION OF DOCUMENTS
S:\Company Files\Clients - Open\ARC\McCord Renda-Kremer\Discovery\Post-Judgment\RPD M Renda.wpd

**REQUEST FOR PRODUCTION NO. 23:**

Please provide billing statements from any and all credit card companies for the past two years.

**REQUEST FOR PRODUCTION NO. 24:**

Please provide any and all insurance policies in your name, including but not limited to health insurance, disability insurance, life insurance, property insurance, fire insurance and theft insurance.

**REQUEST FOR PRODUCTION NO. 25:**

Please provide any and all partnership agreements in which you are a partner.

**REQUEST FOR PRODUCTION NO. 26:**

Please provide any and all 1099 tax forms received by you during the past five years.

**REQUEST FOR PRODUCTION NO. 27:**

Please provide any and all W-2 forms received by you during the past five years.

**REQUEST FOR PRODUCTION NO. 28:**

Please provide any and all employment agreements in which you are currently an employee.

**REQUEST FOR PRODUCTION NO. 29:**

Please provide any and all contracts under which you are entitled to, but have not yet received monies.

**REQUEST FOR PRODUCTION NO. 30:**

Please provide all documents which indicate your ownership in a going business concern.

**REQUEST FOR PRODUCTION NO. 31:**

Please provide any and all trademarks issued in your name.

**REQUEST FOR PRODUCTION NO. 32:**

Please provide any and all patents issued in your name.

**REQUEST FOR PRODUCTION NO. 33:**

Please provide any and all copyrights issued in your name.

**REQUEST FOR PRODUCTION NO. 34:**

Please provide any and all negotiable document instruments held by you.

**REQUEST FOR PRODUCTION NO. 35:**

Please provide any and all lawsuits in which you are claiming monies from other parties.

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 – FACSIMILE (619)557-9425

**REQUEST FOR PRODUCTION NO. 36**:

Please provide any and all financial statements prepared on your income within the last five years.

**REQUEST FOR PRODUCTION NO. 37**:

Please provide any loan applications prepared by you within the last five years.

**REQUEST FOR PRODUCTION NO. 38**:

Please provide any and all corporate records within the last ten years which indicate amounts of monies to be paid to you for your services to that corporation.

**REQUEST FOR PRODUCTION NO. 39**:

Please provide any and all partnership records within the last ten years which indicate the amounts of monies to be paid to you for your services to that partnership.

**REQUEST FOR PRODUCTION NO. 40**:

Please provide any and all certificates of deposit held by you at this time.

**REQUEST FOR PRODUCTION NO. 41**:

Please provide any and all personal property valuation documents, including but not limited to certificates of authenticity or appraisals.

**REQUEST FOR PRODUCTION NO. 42**:

Please provide any and all professional licenses held by you at this time.

**REQUEST FOR PRODUCTION NO. 43**:

Please provide any and all documents which show a transfer of an asset from you to another entity during the past five years, including but not limited to transfers of monies to partnerships, corporations, family members, foreign accounts or elsewhere.

**REQUEST FOR PRODUCTION NO. 44**:

Please provide all canceled checks from your deposit accounts for the past five years.

**REQUEST FOR PRODUCTION NO. 45**:

Please provide all deposit slips for your deposit accounts for the past five years.

/ / /

/ / /

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 - FACSIMILE (619)557-9425

**REQUEST FOR PRODUCTION NO. 46**:

Please provide any and all documents which indicate a right to receive future monies, including but not limited to escrow instructions, stock options, contingent interests in any asset or business concern, exclusive rights to participate in a business venture or other financial arrangement.

**REQUEST FOR PRODUCTION NO. 47**:

Please provide any and all documents which reflect a disposition of marital assets.

**REQUEST FOR PRODUCTION NO. 48**:

Please provide any and all documents reflecting liens on your property, including but not limited to personal property, real property or otherwise.

**REQUEST FOR PRODUCTION NO. 49**:

Please provide any and all documents reflecting payment of personal expenses from business accounts.

**REQUEST FOR PRODUCTION NO. 50**:

Please provide any and all documents which reflect pre-payments toward any debts owed by you.

**REQUEST FOR PRODUCTION NO. 51**:

Please provide any and all other documents, not identified above, which identify any other assets owned or controlled by yourself, now or in the last five years.

Respectfully submitted,

DATED: October 12, 2006

**SAMPSON & ASSOCIATES**

By:    /s/ Bryan D. Sampson, Esq.
       Bryan D. Sampson, Esq.
       Attorneys for Judgment Creditor
       Airlines Reporting Corporation

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 - FACSIMILE (619)557-9425

S:\Company Files\Clients - Open\ARC\McCord Renda-Kremer\Discovery\Post-Judgment\RPD M Renda.wpd

# EXHIBIT "4"

1   Vincent Renda, Esq. (CSB #213985)
    Law Offices of Vincent Renda
2   5212 Chelsea Street
    La Jolla, California 92037
3   T: (858) 232-4000
4   F: (858) 488-5700
    Renda5@yahoo.com
5
6   Attorneys for Judgment Debtors

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
10                    IN AND FOR THE COUNTY OF SAN DIEGO

11  AIRLINES REPORTING CORPORATION,    )   Case No.: GIC865200
                                       )
12          Plaintiffs/Judgment Creditor,    )   **MARIO RENDA'S RESPONSES TO**
                                       )   **DEMAND FOR PRODUCTION OF**
13  v.                                 )   **DOCUMENTS PROPOUNDED BY**
                                       )   **JUDGMENT CREDITOR**
14  MCCORD CONSUMER DIRECT, INC. dba)
    A BETTER AIRFARE; MARIO RENDA;)   Judge: Hon. Eugenia A. Eyherabide
15  ROBERT KREMER; SHANNON PATTEE, )   Dept: 25
                                       )
16          Defendants/Judgment Debtors.    )
                                       )
17                                     )
                                       )
18                                     )
                                       )
19  _____)

20

21  PROPOUNDING PARTY:        AIRLINES REPORTING CORPORATION

22  RESPONDING PARTY:         MARIO RENDA

23  SET NO:                   ONE

24
        Pursuant to *California Code of Civil Procedure Section 2031*, MARIO RENDA responds
25
    to AIRLINES REPORTING CORPORATION'S first demand to produce documents as
26
    follows:
27

28

                                         -1-
                    MARIO RENDA'S RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS

1  All of the responses contained herein are based only upon such information that is presently

2  available and specifically known to Respondent. The following responses are given without

3  prejudice to Respondent's right to produce evidence of any subsequently discovered fact, or

4  facts, that it may later develop. The responses contained herein are made in a good faith

5  effort to supply as much factual information and documentation as is presently known, but

6  should in no way lead to the prejudice of Respondent in relation to further discovery,

7  research, or analysis. Any documents to be produced hereunder shall be produced to the

8  office of Sampson & Associates.

9
                    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS

10

11  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 1:

12  See response to Special Interrogatory No. 5.

13
    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 2:
14

15  See response to Special Interrogatory No. 7.

16  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 3:

17  See response to Special Interrogatory No. 11.

18
    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 4:
19

20  See response to Special Interrogatory No. 14.

21  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 5:

22  Respondent does not have documents responsive to this request in his custody, control or

23  possession.

24  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 6:

25

26  N/A.

27  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 7:

28

1   N/A.

2   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 8:

3
4   N/A.

5   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 9:

6   Respondent does not have documents responsive to this request in his custody, control or

7   possession.

8   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 10:

9
10  N/A.

11  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 11:

12  N/A.

13
14  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 12:

15  N/A.

16  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 13:

17
18  N/A.

19  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 14:

20  N/A.

21  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 15:

22
23  N/A.

24  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 16:

25  N/A.

26
27  RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 17:

28  N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 18:

Documents responsive to this request in Respondent's custody, control and possession will be produced.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 19:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 20:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 21:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 22:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 23:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 24:

See response to Special Interrogatory No. 98.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 25:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 26:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 27:

N/A.

RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 28:

MARIO RENDA'S RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS

1    N/A.

2    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 29:

3    N/A.

4

5    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 30:

6    N/A.

7

8    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 31:

9    N/A.

10   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 32:

11   N/A.

12   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 33:

13

14   N/A.

15   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 34:

16   N/A.

17

18   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 35:

19   N/A.

20   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 36:

21   N/A.

22

23   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 37:

24   N/A.

25   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 38:

26   N/A.

27

28   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 39:

MARIO RENDA'S RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS

1    N/A.

2    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 40:

3

4    N/A.

5    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 41:

6    N/A.

7

8    RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 42:

9    N/A.

10   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 43:

11   N/A.

12

13   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 44:

14   N/A.

15   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 45:

16   N/A.

17

18   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 46:

19   N/A.

20

21   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 47:

22   N/A.

23   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 48:

24   N/A.

25   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 49:

26   N/A.

27

28   RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 50:

1    N/A.

2    <u>RESPONSE TO DEMAND TO PRODUCE DOCUMENTS NO. 51:</u>

3    N/A.

4

5    Dated: October 13, 2006        By: _____

6                                Mario Renda

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARIO RENDA'S RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS

# EXHIBIT "5"

F I L E **D**
Clerk of the Superior Court

NOV 1 7 2006

By: R. LINDSEY-COOPER, Deputy

NOV 13 '06 PM 12:02

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| MARIO RENDA, an individual, <br><br> Plaintiff, <br><br> .vs. <br><br><br> ANA LUISA NEVAREZ, an individual, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: GIC798346 <br> [Complaint filed: 10/18/02] <br><br> [~~PROPOSED~~] ORDER ENTERING JUDGMENT ON BEHALF OF MARIO RENDA PURSUANT TO CODE OF CIVIL PROCEDURE § 664.6 <br><br> Date:  November 17, 2006 <br> Time:  8:30 a.m. <br> Judge:  Hon. Joan M. Lewis <br> Dept.:  65 |

On November 17, 2006, plaintiff Mario Renda's Motion to Enforce the Terms of a Settlement pursuant to Code of Civil Procedure section 664.6 was heard in Department 65, before the Honorable Joan M. Lewis.

Plaintiff appeared through his attorney Daniel W. Towson and attorney Raymond Vecchio appeared on behalf of defendant Ana Luisa Nevarez.

Based upon the parties' motion papers, oral argument and the Court file, the Court finds as follows:

1)    Plaintiff Mario Renda and defendant Ana Luisa Nevarez reached a settlement that was read into the record on February 3, 2004 and further reflected in a written Promissory Note and Complete Settlement and Release Agreement.

/ / / /

1

1    2)    The Court has jurisdiction pursuant to 664.6 of the Code of Civil Procedure to

2 enter judgment based on the settlement in lieu of the parties' stipulation and Court Order dated

3 April 9, 2004.

4    3)    Defendant Ana Luisa Nevarez has breached the terms of the settlement given her

5 failure to pay the final balloon payment required under Promissory Note, which was due on or

6 before August 4, 2006.

7    Therefore, Court orders as follows.

8    THAT JUDGMENT IS ENTERED on behalf of plaintiff Mario Renda against defendant

9 Ana Luisa Nevarez for the following amounts:

10    $216,204.55 for breach of the Promissory Note;

11    $600,000.00 pursuant to the stipulated judgment; and

12    $1,225.00 for attorneys' fees and costs to enforce the settlement.

13 Total monetary judgment: $817,429.55.

14 **IT IS SO ORDERED**

15 Dated: November __17__, 2006

16 _Joan M Lewis_
    Honorable Judge Joan M. Lewis

17    JOAN M. LEWIS

18

19

20

21

22

23

24

25

26

27

28

(PROPOSED) ORDER TO ENFORCE JUDGMENT

# EXHIBIT "6"

1  JOHN J. FRENI, ESQ. (Bar No. 132912)
   A Professional Law Corporation
2  600 West Broadway, Suite 400
   San Diego, CA 92101
3  (619) 557-9128; (619) 515-1197

4  Attorneys for Plaintiff MARIO RENDA

5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF SAN DIEGO**

10  MARIO RENDA, an individual,              CASE NO. 37-2007-00075627-CU-NP-CTL

11              Plaintiff,                    PLAINTIFF MARIO RENDA'S FIRST
                                             AMENDED COMPLAINT FOR
12  v.                                       FRAUDULENT TRANSFER AND FOR
                                             PUNITIVE AND ENHANCED DAMAGES
13  ANA LUISA NEVAREZ a.k.a. ANA             (Cal. Civ. Code §§ 3439, et seq., 3294 &
    LUISA ONTIVEROS LOPEZ; dba BTC;          3345)
14  dba BI-NATIONAL TRANSPORTATION
    CENTER; dba PARADOR LAS
15  AMERICAS; dba TRUCKERS
    REGISTRATION SERVICES; dba
16  INTERNATIONAL MEDS SOURCE; dba
    OVERLAND INTERNATIONAL
17  EXPRESS; dba ASSOCIATED
    TRANSPORTATION SERVICES; BI-
18  NATIONAL TRANSPORTATION
    CENTER, INC., a California corporation;
19  LOPONTI HOLDINGS, INC., a California
    corporation; ATS INTERNATIONAL, INC.
20  dba PRONTO TRADE & EXPORTS, form
    of entity unknown; and DOES 1 through
21  100, inclusive;

22              Defendants.

23

24                              **I.**

25                       **INTRODUCTION**

26      1.    Plaintiff MARIO RENDA is an individual who resides in San Diego County,

27  California. At all times relevant to this action, plaintiff has been at least 65 years of age or

28  / / /

                                    1

1    older, and is therefore a "senior citizen" as that term is defined by California Civil Code

2    section 1761, subdivision (f).

3        2.    Plaintiff is informed and believes that defendant ANA LUISA NEVAREZ a.k.a.

4    ANA LUISA ONTIVEROS LOPEZ ("NEVAREZ"), resides in San Diego County, California.

5    Plaintiff is further informed and believes that at various times relevant to this action,

6    NEVAREZ has done business as BTC, BI-NATIONAL TRANSPORTATION CENTER,

7    PARADOR LAS AMERICAS, TRUCKERS REGISTRATION SERVICES,

8    INTERNATIONAL MEDS SOURCE, OVERLAND INTERNATIONAL EXPRESS, and

9    ASSOCIATED TRANSPORTATION SERVICES.

10       3.    Plaintiff is informed and believes that defendant BI-NATIONAL

11   TRANSPORTATION CENTER, INC. ("BI-NATIONAL"), is a California corporation, which

12   at all times relevant to this action, has been doing business in San Diego County California,

13   and has maintained its principal place of business in San Diego County, California.

14       4.    Plaintiff is informed and believes that defendant LOPONTI HOLDINGS, INC.

15   ("LOPONTI") is a California corporation, which at all time relevant to this action, has been

16   doing business in San Diego County, California, and maintains its principal place of business

17   in San Diego County, California.

18       5.    Plaintiff is informed and believes that defendant ATS INTERNATIONAL, INC.

19   dba PRONTO TRADE & EXPORTS ("ATS") is a business entity, whose form is currently

20   unknown, which at all times relevant to this action has been doing business in San Diego

21   County, California, and maintains its principal place of business in San Diego County,

22   California.

23       6.    Plaintiff is unaware of the true names and capacities of the defendants identified

24   as DOES 1 through 100, inclusive, and accordingly, Plaintiff identifies these defendants by

25   such fictitious names.  Plaintiff is informed and believes that DOES 1 through 100 are liable in

26   some manner or capacity for the damages Plaintiff has suffered as a result of the defendants'

27   wrongful actions described in this complaint.  Plaintiff will amend his complaint upon

28   discovery of the names and capacities of the defendants identified as DOES 1 through 100.

1    7.    Plaintiff is informed and believes that defendants ATS, LOPONTI, BI-

2    NATIONAL and Does 1 through 100 are alter egos of defendant NEVAREZ. Plaintiff is

3    informed and believes that NEVAREZ under capitalized defendants BI-NATIONAL,

4    LOPONTI, ATS and DOES 1 through 100, and that defendant NEVAREZ commingled her

5    assets with assets of the defendants ATS, LOPONTI, BI-NATIONAL and DOES 1 through

6    100. Plaintiff is further informed and believes that Defendant NEVAREZ failed to maintain

7    any type of separate entity existence and failed to follow appropriate formalities concerning

8    defendants BI-NATIONAL, LOPONTI, ATS and DOES 1 through 100. Plaintiff is informed

9    and believes that recognizing the fiction of a separate corporate existence of defendants BI-

10   NATIONAL, LOPONTI, ATS and DOES 1 through 100, on the one hand, and defendant

11   NEVAREZ, on the other hand, would perpetrate a fraud, improperly protect NEVAREZ from

12   liability for her wrongful actions and frustrate the interests of justice.

13   8.    Plaintiff is informed and believes that each of the defendants, including DOES 1

14   through 100, was acting in the course and scope of his, her or its duties as an agent,

15   representative, employee, or managing agent of each of the other defendants in committing the

16   wrongful actions described in this complaint. Alternatively, Plaintiff is informed and believes

17   that each defendant directed or ratified the wrongful actions of each of the other defendants

18   who acted as his, hers, or its agents, representatives, employees and/or managing agents.

19   Plaintiff is further informed and believes that each of the defendants conspired with and/or

20   aided and abetted each of the other defendants in committing the wrongful actions identified in

21   this complaint.

22                                              II.

23                            VENUE AND JURISDICTION

24   9.    Venue is appropriate in this Court because one or more of the defendants have

25   their principal place of business in San Diego County, California, and/or resides in San Diego

26   County, California.

27   10.   Jurisdiction is appropriate in this Court because the amount in controversy

28   between the parties exceeds $25,000 in the aggregate.

3

RENDA FIRST AMENDED COMPLAINT FOR

## III.

## FACTUAL BACKGROUND

11.     On April 8, 2002, Plaintiff and NEVAREZ entered into a written joint venture agreement to develop 2,640 hectars of real property located on the United States/Mexican border.  On February 4, 2003, Plaintiff sued NEVAREZ for breach of the joint venture agreement, for fraud, and for negligent misrepresentation in an action styled, *Renda v. Nevarez*, San Diego County Superior Court Case No. GIC 798346.  Plaintiff contended that NEVAREZ made material misrepresentations concerning her ownership interest and rights concerning the property.

12.     On February 3, 2004, Plaintiff and NEVAREZ settled the litigation.  Plaintiff and NEVAREZ put their settlement terms on the record before the court, and also signed a written settlement and release agreement in July 2004.

13.     NEVAREZ breached the settlement agreement by failing to pay Plaintiff the final balloon payment due in August 2006.  Plaintiff moved to enforce the parties settlement agreement, pursuant to Code of Civil Procedure section 664.6.  On November 17, the Court granted Plaintiff's motion and entered judgment against NEVAREZ for $817,429.55.

## IV.

## FIRST CAUSE OF ACTION

### (Fraudulent Transfers in Violation of Civil Code §§ 3439, et seq.:  Against All Defendants)

14.     Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 13, inclusive, in this cause of action.

15.     Plaintiff is informed and believes that Defendant NEVAREZ has wrongfully acted to hinder, delay, or defraud Plaintiff in collecting his judgment by fraudulently transferring assets to defendants BI-NATIONAL, LOPONTI, ATS, and DOES 1 through 100.  Plaintiff is informed and believes that defendant NEVAREZ is selling aggregate from the property in Mexico that was the subject of the joint venture agreement and having the proceeds

/ / /

4

1    from those sales transferred to defendants BI-NATIONAL, LOPONTI, ATS and/or DOES 1

2    through 100, to hinder, delay or defraud Plaintiff in collecting his judgment.

3        16.    Plaintiff is informed and believes that all defendants, including DOES 1 through

4    100, have conspired to commit fraudulent transfers with the actual intent to hinder, delay or

5    defraud Plaintiff in collecting his judgment.

6        17.    As a result of Defendants' fraudulent transfers, Plaintiff has suffered substantial

7    damages, the full amount of which will be proven at the time of trial.

8        18.    Plaintiff is informed and believes that Defendants acted with malice, oppression

9    and fraud in committing fraudulent transfers. Defendants' actions were despicable and in

10   conscious disregard of Plaintiff's rights. Accordingly, Plaintiff will seek an award of punitive

11   damages against Defendants to punish and make an example of them, pursuant to California

12   Civil Code section 3294.

13       19.    Plaintiff is informed and believes that all defendants know, or should know that

14   Plaintiff is a "senior citizen" as that term is defined by California Civil Code section 1761,

15   subdivision (f), because at all times relevant to this action, Plaintiff has been 65 years of age or

16   older. Accordingly, Plaintiff is entitled to an enhancement of any award of punitive damages

17   or other penalty imposed against the defendants, up to treble the amount awarded.

18                                         V.

19                              **PRAYER FOR RELIEF**

20   WHEREFORE, Plaintiff prays for judgment as follows:

21   1.    For compensatory damages, according to proof;

22   2.    For an order that voids any and all fraudulent transfers among or between the

23         Defendants;

24   3.    For punitive damages, pursuant to California Civil Code section 3294;

25   4.    For treble damages, pursuant to California Civil Code section 3345;

26   5.    For attorney's fees, as provided by law and/or contract;

27   6.    For costs of suit;

28   7.    For pre- and post-judgment interest;

5

RENDA FIRST AMENDED

8.    For such other and further relief as the court deems just and proper.

Dated:   2/28/08

JOHN J. FRENI, ESQ.
A Professional Law Corporation


By: _____
JOHN J. FRENI, ESQ.
Attorneys for Plaintiff, MARIO RENDA

6

RENDA FIRST AMEND

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central
TELEPHONE NUMBER: (619) 685-6145

PLAINTIFF(S) / PETITIONER(S):    Mario Renda

DEFENDANT(S) / RESPONDENT(S):    Ana Luisa Nevarez et.al.

RENDA VS. NEVAREZ

| NOTICE OF RESCHEDULED HEARING | CASE NUMBER: |
|---|---|
| | 37-2007-00075627-CU-NP-CTL |

Notice is given that the hearing in the above-entitled case has been rescheduled from 03/14/2008  10:20 AM    to date and time shown below.  All inquiries regarding this notice should be referred to the court listed above.

**TYPE OF HEARING**
Civil Case Management Conference

| **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|
| 05/30/2008 | 09:30 am | C-70 | Jay M. Bloom |

Counsel: Check service list.  If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference.  (San Diego Local Rules, Division II, CRC Rule 212).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Renda vs. Nevarez

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER: |
|---|---|
| | 37-2007-00075627-CU-NP-CTL |

I certify that I am not a party to this cause. I certify that a true copy of the NOTICE OF RESCHEDULED HEARING was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at <u>San Diego</u>, California, on <u>03/18/2008</u>.

Clerk of the Court, by: _E. Castaneda_____ , Deputy
                                                      E. Castaneda

JOHN J. FRENI
600 WEST BROADWAY SUITE 400
SAN DIEGO, CA 92101

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO
### CENTRAL
#### MINUTE ORDER

Date: 03/14/2008
                              Time: 10:20:00 AM          Dept:  C-70
Judicial Officer Presiding:  Judge Jay M. Bloom
Clerk: Ernestina Castaneda

Bailiff/Court Attendant: Scot  Parriott
ERM:
Reporter:

Case Init. Date: 09/25/2007

Case No: 37-2007-00075627-CU-NP-CTL    Case Title: Renda vs. Nevarez

Case Category: Civil - Unlimited
                              Case Type: Non-PI/PD/WD tort - Other

Event Type: Civil Case Management Conference

**Appearances:**

See attached sign-in sheet for appearances.

Civil Case  Management Conference continued  to  05/30/2008  at  09:30  AM  before  Jay  M.  Bloom.
Answers have not been filed yet. Plaintiff to give notice.

| | Calendar No.: 23 |
|---|---|
| **Superior Court of California** **County of San Diego** **SIGN-IN SHEET** | Court Use Only |

**CASE:** 37-2007-00075627-CU-NP-CTL - Mario Renda vs. Ana Luisa Nevarez

**EVENT TYPE:** Civil Case Management Conference

**EVENT DATE/TIME:** 03/14/2008 10:20 am

**DEPARTMENT:** C-70

**JUDGE:** Jay M. Bloom

By signing below, it is stipulated by the parties and ordered as follows:

Any actions or dates stipulated and agreed to by the parties at the Case Management Conference will become an order of the Court. No procedure or deadline ordered pursuant to the stipulation of the parties may be modified, extended or avoided by stipulation or agreement of the parties unless approved by the Court in advance of the date sought to be altered.

**CASE DEEMED AT ISSUE AND PLACED ON THE CIVIL ACTIVE LIST.** If the case is deemed at issue and placed on the civil active list, pursuant to stipulation of the parties, no new parties may be added without leave of court, and all unserved, non-appearing and fictitiously named parties are dismissed.

**EXCHANGE OF EXPERTS.** The parties stipulate to dispense with the demand requirements of CCP 2034, and agree to exchange experts in accordance with San Diego Superior Court Rules, Div. II. (All other provisions of CCP 2034 apply).

*Case is not at issue JJF*

| ATTORNEY/PARTICIPANT NAME | CLIENT NAME | SIGNATURE |
|---|---|---|
| Ats Internation Inc | [DFN] | |
| Bi-National Transportation Center Inc | [DFN] | |
| FRENI, JOHN J. | Renda, Mario [PLN] | *Case not at issue* *John J. Freni* |
| Loponti Holdings Inc | [DFN] | |
| Nevarez, Ana Luisa | [DFN] | |
| Nevarez, Nicole | [DFN] | |
| Nevarez, Robert A | [DFN] | |
| Torres, Matilde | [DFN] | |
| | | |
| | | |
| | | |

# EXHIBIT "7"

One America Plaza
600 West Broadway, Suite 400
San Diego, California 92101

# JOHN J. FRENI, Esq.
## A Professional Law Corporation

March 31, 2008

tel 619.557.9128
fax 619.515.1197
john@freni-law.com

Bryan D Sampson, Esq.
Sampson and Associates
2139 First Avenue
San Diego, CA 92101

       Re:   *Renda v. Nevarez*
             SDSC Case No. GIC 798346

Dear Mr. Sampson:

I represent plaintiff and judgment creditor Mario Renda in the above-entitled action. We are in receipt of the notice of lien that you served on prior counsel, Simpson Delmore and Green, on behalf of Airlines Reporting Corporation. We demand that Airlines Reporting Corporation withdraw its notice of lien immediately because it is in violation of California Code of Civil Procedure section 708.410.

Section 708.410, subdivision (a), allows a judgment creditor to obtain a lien on a "pending action or special proceeding." "[A]n action or special proceeding is pending until the time for appeal from the judgment has expired or, if an appeal is filed, until the appeal has been finally determined." Cal. Civ. Proc. § 708.410, subd. (d). "These judgment lien statutes [section 708.410, *et seq.*] are subject to strict construction because they are purely the creation of the legislature." *Pangborn Plumbing Corp. v. Carruthers & Skiffington*, 97 Cal.App.4th 1039, 1056 (2002). Mr. Renda's action against Ms. Nevarez is no longer "pending" for the purposes of section 708.410 because judgment was entered on November 17, 2006, and Ms. Nevarez never appealed. Therefore, Airlines Reporting Corporation is unable to establish a lien under section 708.410.

Accordingly, please withdraw Airlines Reporting Corporation's notice of lien immediately. If Airlines Reporting Corporation refuses to withdraw its notice of lien, we will have no choice but to bring a motion to strike the notice of lien and a motion for sanctions pursuant to Code of Civil Procedure section 128.7.

If you have any questions concerning the above, or would like to discuss these matters further, please call.

Sincerely,

JOHN J. FRENI, ESQ.
A Professional Law Corporation

JOHN J. FRENI

# EXHIBIT "8"

1  **SAMPSON & ASSOCIATES**
   Bryan D. Sampson, Esq. (#143143)
2  Mary L. Fickel, Esq. (#221872)
   2139 First Avenue
3  San Diego, California 92101
   Tel. (619) 557-9420 / Fax (619) 557-9425
4  bsampson@sampsonlaw.net

5  Attorneys for Judgment Creditor
   AIRLINES REPORTING CORPORATION
6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10
   AIRLINES REPORTING CORPORATION,          Case No. 08-MC-00088
11
                 Plaintiff/Judgment Creditor,     **[PROPOSED] ASSIGNMENT ORDER**
12
   v.
13
   COMMERCIAL TRAVEL CORPORATION             Date:
14 d/b/a MATLOCK TRAVEL, et al.,             Time:
                                             Ctrm:
15             Defendants/Judgment Debtors.   Judge:  Hon.

16

17         The motion of Plaintiff/Judgment Creditor AIRLINES REPORTING CORPORATION for an

18 order assigning to Judgment Creditor any monies now due, or to become due in the future, to

19 Defendant/Judgment Debtor MARIO RENDA until the judgment is paid in full, came before this Court

20 on the above date and time.

21         Judgment Creditor appeared through its attorneys, Bryan D. Sampson and May L. Fickel of

22 Sampson & Associates.  Judgment Debtor Renda did not appear/appeared through his attorney.  Upon

23 reviewing the pleadings filed by the parties, reviewing the pleadings on file, hearing oral argument and

24 finding good cause appearing therefor:

25         **IT IS HEREBY ORDERED** that the following rights to payment of Debtor Renda be, and

26 hereby are, assigned to Plaintiff/Judgment Creditor Airlines Reporting Corporation, in care of Sampson

27 & Associates, attn. Bryan D. Sampson, 2139 First Avenue, San Diego, California, 92101.

28 / / /

1  This assignment order covers:

2  "Any and all rights to any interest or payment now due or to become due in the future to Judgment Debtor Mario Renda under <u>Renda v. Nevarez</u>, Superior Court

3  of California, County of San Diego, Case No. GIC798346."

4  "Any and all contingent interests to any payment now due or to become due in the future to Judgment Debtor Mario Renda under <u>Renda v. Nevarez, et al. (II)</u>, Superior

5  Court of California, County of San Diego, Case No. 37-2007-00075627-CU-NP-CTL."

6

7  **IT IS HEREBY FURTHER ORDERED** that Judgment Debtor Mario Renda, along with

8  third parties who are served with notice, shall pay any and all monies now due, or to become due

9  under this order to: "Sampson & Associates, Client Trust Account" at 2139 First Avenue, San

10  Diego, California 92101 to be applied to this judgment herein until such judgment is fully satisfied

11  or this order is amended. The balance due on the judgment is $701,942.81, plus 4.16% interest

12  from September 4, 2007.

13  **NOTICE IS HEREBY GIVEN THAT FAILURE BY JUDGMENT DEBTOR MARIO**

14  **RENDA, OR ANY OF THE NOTICED THIRD PARTIES TO COMPLY WITH THIS**

15  **ORDER MAY SUBJECT THE JUDGMENT DEBTOR OR THIRD PARTY TO BEING**

16  **SANCTIONED, AND/OR HELD IN CONTEMPT OF COURT.**

17  **IT IS SO ORDERED**.

18

19  Dated: _____

20  **JUDGE, UNITED STATES DISTRICT COURT**

21

22

23

24

25

26

27

28

SAMPSON & ASSOCIATES
ATTORNEYS AT LAW
2139 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619)557-9420 - FACSIMILE (619)557-9425

Case No. 08-MC-00088
ASSIGNMENT ORDER