1  JOHN J. FRENI, ESQ. (Bar No. 132912)
   A Professional Law Corporation
2  600 West Broadway, Suite 400
   San Diego, CA 92101
3  (619) 557-9128; (619) 515-1197

4  Attorneys for Defendant, MARIO RENCA

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  AIRLINES REPORTING CORPORATION,    |   CASE NO. 08-MC-00088

11        Plaintiff/Judgment Creditor,   |   DECLARATION OF JOHN J. FRENI IN
                                         |   SUPPORT OF DEFENDANT MARIO
    v.                                   |   RENDA'S *EX PARTE* MOTION FOR STAY
12                                       |   PURSUANT TO FEDERAL RULES OF
    COMMERCIAL TRAVEL                    |   CIVIL PROCEDURE RULE 62(b)(4)
13  CORPORATION d/b/a MATLOCK            |
    TRAVEL, *et al.*,                    |   Date:
14                                       |   Time:
          Defendants/Judgment Debtors.   |   Ctrm:       1, 4th Floor
15                                       |   Judge:      Hon. Irma E. Gonzalez
16                                       |
                                         |   Judgment: September 4, 2007
17

18        I, JOHN J. FRENI, declare:

19        1.    I am an attorney licensed and admitted to practice before all state and federal

20  courts in the State of California and counsel for Defendant MARIO RENDA in this action.

21        2.    On or about February 22, 2008, Plaintiff AIRLINES REPORTING

22  CORPORATION ("ARC")  registered with this Court the default judgment it obtained against

23  Mr. RENDA in the United States District Court for the Eastern District of Virginia, in the case

24  at bar. Mr. RENDA has recently retained me to bring a motion to collaterally attack ARC's

25  default judgment.

26        3.    I have scheduled a hearing for August 18, 2008, at 10:30 a.m., on a motion

27  under Federal Rules of Civil Procedure, Rule 60(b), to vacate ARC's default judgment

28  primarily on the grounds that the default judgment is void because the Virginia District Court

                                         1

1  did not have personal jurisdiction over Mr. RENDA.  In a related and virtually identical action
2  between ARC and Mr. RENDA, styled *Airlines Reporting Corporation v. Uniglobe Fairway*
3  *Travel, Inc.*, United States District Court, Eastern District of Virginia, Civil Action No.:
4  1:04cv622, the Virginia District Court held that it did not have personal jurisdiction over Mr.
5  RENDA because he did not have sufficient minimum contacts with the State of Virginia.  On
6  March 21, 2005, the Virginia District Court dismissed Mr. RENDA from *Uniglobe* without
7  prejudice because of a lack of personal jurisdiction.  A true and correct copy of the March 2,
8  2005 Supplemental Report and Recommendation in *Uniglobe*, in which United States Magistrate
9  Judge Barry R. Portez found that the Virginia District Court lacked personal jurisdiction over
10 Mr. RENDA (see, pages 12 - 15), is attached to my declaration as Exhibit 1.  Attached as
11 Exhibit 2 to my declaration is a true and correct copy of the Virginia District Court's March 21,
12 2005 Order, in which the Honorable T.S. Ellis II adopted Magistrate Portez' findings of fact
13 and recommendations and dismissed Mr. RENDA without prejudice based on a lack of personal
14 jurisdiction.

15     4.     Mr. RENDA did not appear in either *Uniglobe* or the case at bar.  In *Uniglobe*,
16 the Virginia District Court raised the issue of personal jurisdiction *sua sponte*, and ruled on the
17 issue after affording ARC an opportunity to fully brief the issue.  *See*, Ex. 1, pp. A different
18 district judge presided over the case at bar, who did not address the issue of personal
19 jurisdiction.  For reasons that will be explained in greater detail in Mr. RENDA's motion to
20 vacate, the default judgment in this case was not entered until September 4, 2007.  Although the
21 same counsel represented ARC in both matters, ARC did not disclose the ruling in *Uniglobe* to
22 the district judge in this matter.  ARC also filed a state court action against Mr. RENDA in the
23 Circuit Court for Arlington County, Virginia, and obtained a default judgment without
24 disclosing the *Uniglobe* judgment to the state court, which did not question personal
25 jurisdiction.  Mr. RENDA is currently challenging ARC's Virginia state court default judgment
26 in the San Diego County Superior Court.

27     5.     On June 17, 2008, I requested, through counsel, that ARC agree to a stay of
28 execution and enforcement proceedings, pursuant to Federal Rules of Civil Procedure, Rule

1    62(b), until the Court rules on Mr. RENDA's Rule 60(b) motion. The San Diego County

2    Superior Court has issued a similar stay in the related state court action, which ARC did not

3    oppose. On June 20, 2008, ARC's counsel, Brian Sampson, responded that ARC declined to

4    agree to a stay in this action. Unfortunately, I did not receive Mr. Sampson's facsimile until

5    June 23rd.

6        6.     ARC has a motion for the issuance of an assignment order pending that is

7    scheduled for hearing on July 14, 2008 at 10:30 a.m. If the Court does not issue the requested

8    stay, Mr. RENDA will be required to file his opposition to ARC's motion for an assignment

9    order on Monday, June 30, 2008. I respectfully submit that the interests of justice and judicial

10    economy weigh in favor or issuing a stay because it will avoid both Mr. RENDA and the Court

11    spending valuable time and resources addressing ARC's motion for an assignment order, which

12    will be moot if the Court grants Mr. RENDA's Rule 60(b) motion. If ARC's default judgment

13    survives Mr. RENDA's Rule 60(b) motion, the motion for an assignment order can be

14    recalendared and fully briefed.

15        7.     To alleviate any concerns regarding security for ARC's position, Mr. RENDA

16    has no objection to the Court issuing a protective order that prohibits him from transferring or

17    disposing of any of his assets, accept to pay for his usual and necessary living expenses, during

18    the time the Rule 62 stay is in place. Mr. RENDA is subject to a similar protective order in the

19    related action pending in the San Diego County Superior Court.

20        I declare under penalty of perjury under the laws of the United States of America and

21    the State of California that the foregoing is true and correct and that this declaration was

22    executed in San Diego, California on June 25, 2008.

23

24    Dated: June 25, 2008                 **s/ JOHN J. FRENI, ESQ.**

25

26

27

28

**3**

1 | **DECLARATION OF JOHN J. FRENI IN SUPPORT OF**
2 | **DEFENDANT MARIO RENDA'S EX PARTE MOTION FOR STAY -
EXHIBITS**

3 | **Exhibit 1:**    Supplemental Report and Recommendation, filed March 2,    **Pages 1-15**

4 | 2005, in *Airlines Reporting Corp. v. Uniglobe Fairway*

5 | *Travel, Inc., et al.*, United States District Court for the

6 | Eastern District of Virginia, Alexandria Division, Civil

7 | Action No:  1:04cv622.

8 |

9 | **Exhibit 2:**    Order [adopting findings of fact and recommendations and    **Page 16**

10 | dismissing case without prejudice], filed March 21, 2005, in

11 | *Airlines Reporting Corp. v. Uniglobe Fairway Travel, Inc.,*

12 | *et al.*, United States District Court for the Eastern District of

13 | Virginia, Alexandria Division, Civil Action No: 1:04cv622.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AIRLINES REPORTING CORP.,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          CIVIL ACTION NO: 1:04cv622
                                    )
UNIGLOBE FAIRWAY TRAVEL,            )
INC., *et al.*,                     )
                                    )
            Defendants.             )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

**I.    Procedural History**

This matter was recommitted to Magistrate Judge Barry R. Poretz from District Judge

T.S. Ellis, III to evaluate, *inter alia*, whether this Court exercises personal jurisdiction over the

defendants in default, Mario Renda and Robert Kremer.

Plaintiff filed a Complaint on May 28, 2004 and a First Amended Complaint on July 30,

2004 to add Mario Renda and Robert Kremer as defendants in the action. (Dkt. nos. 1, 6). By

private process server, Plaintiff served Defendant Robert Kremer on August 3, 2004 and Mario

Renda on August 4, 2004 with a Summons and a copy of the First Amended Complaint. (Dkt.

nos. 8, 9). Defendants Mario Renda and Robert Kremer did not answer or otherwise file

responsive pleadings in this action. On Plaintiff's motion, the Clerk entered Defaults as to

Defendants Mario Renda and Robert Kremer on August 27, 2004. (Dkt. nos. 14, 15). On

September 17, 2004, Magistrate Judge Thomas R. Jones heard Plaintiff's Motion for Entry of

1

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

Exhibit 1
Page - 1

Default Judgment against Defendants Mario Renda and Robert Kremer. (Dkt. no. 16).

Magistrate Judge Jones took the instant Motion under advisement and directed Plaintiff to submit to the Court, within seven days, a supplemental declaration to substantiate its request for damages. On September 24, 2004, Plaintiff submitted a Supplemental Declaration of Plaintiff Regarding Breakdown of Amounts Owed in Support of Plaintiff's Motion for Entry of Default Judgment against Defendants Mario Renda and Robert Kremer ("Supplemental Declaration"). (Dkt. no. 24).

Pursuant to 28 U.S.C. Section 636(b), Magistrate Judge Poretz issued a Report and Recommendation on Plaintiff's instant Motion for Default Judgment on October 14, 2004. (Dkt. no. 25). Upon review, Judge Ellis recommitted this matter to Judge Poretz to enter supplemental findings and recommendations concerning *in personam* jurisdiction over Defendants Mario Renda and Robert Kremer, Defendants' individual liabilities under the several counts, and Plaintiff's request for a specific damage award on each count. Consistent with Judge Ellis' mandate, Judge Poretz ordered Plaintiff to supplement its instant Motion by November 23, 2004 to provide further factual and legal support. (Order, Dkt. no. 27). After the Court granted Plaintiff an time extension, Plaintiff filed a Supplemental Memorandum in Support of Plaintiff's Motion for Entry of Default Judgment Against Defendants Mario Renda and Robert Kremer ("Supplemental Memorandum") on December 13, 2004. (Dkt. no. 38). The Court further permitted Plaintiff to support the factual allegations proffered in its Supplemental Memorandum with affidavits and exhibits, and as such, Plaintiff filed a Revised Supplemental Memorandum with supporting documents on February 22, 2005. (Dkt. nos. 44, 45).

Exhibit 1
Page - 2

II.    **Factual Summary**

The following factual summary is based on Plaintiff's First Amended Complaint, Motion

for Entry of Default Judgment, Supplemental Declaration, Supplemental Memorandum, Revised

Supplemental Memorandum, and the exhibits and affidavits in support thereto.  (Dkt. nos. 6, 16,

24, 38, 44, 45).

A.    General Allegations in the First Amended Complaint

Plaintiff asserts that Defendant Uniglobe Fairway Travel, Inc. ("Uniglobe") and several of

its officers and directors committed, *inter alia*, a breach of contract, breaches of fiduciary duties,

and fraud.  Although Defendants Uniglobe, Robert F. Kreidler, and Anthony Renda remain as

parties in this action, only Defendants Mario Renda and Robert Kremer have defaulted (the

"Defaulting Defendants").  Upon Plaintiff's request, defendants Thomas K. Taylor, Marie A.

Taylor, Frank J. Costa, and Joseph Russell were dismissed from this action on November 10,

2004.  (Dkt. nos. 29-31).

In its First Amended Complaint and Revised Supplemental Memorandum supporting its

instant Motion, Plaintiff alleges that Defendants Robert Kremer and Mario Renda committed the

following acts: breach of fiduciary duty (Count 2), conversion (Count 3), fraud (Count 4),

statutory conspiracy (Count 5), common law conspiracy (Count 5), and unjust enrichment (Count

6).  (Am. Compl, Dkt. no. 6, ¶¶ 69-131; Rev. Supp. Mem., Dkt. no. 44 at 9-13).

To form the factual bases for its allegations against the Defaulting Defendants, Plaintiff

avers that it entered into an Agent Reporting Agreement (ARA) with the corporate Defendant

Uniglobe on May 10, 1983.  (Am. Compl., Dkt. no. 6, ¶¶ 31-32).  Sometime in or around 2000,

Defendant Uniglobe's then-owners, Thomas K. Taylor and Marie A. Taylor, transferred

3

Exhibit 1
Page - 3

ownership of Uniglobe to Defendants James Kreidler, Robert Kremer, Mario Renda and/or Anthony Renda without the pre-approval of Plaintiff pursuant to the terms of Uniglobe's ARA with Plaintiff. (Am. Compl., Dkt. no. 6, ¶¶ 34-35).

Although Defendants Robert Kremer and Mario Renda did not execute the ARA on behalf of Defendant Uniglobe, Plaintiff contends that the Defaulting Defendants operated Uniglobe with other defendants, had access to ticket stock and plates, and were involved in the preparation of Uniglobe's weekly sales reports to Plaintiff. (Am. Compl., Dkt. no. 6, ¶¶ 21-22). Through their operation, Plaintiff further argues that the Defaulting Defendants operated Uniglobe as an unapproved travel agency, and failed to adhere to the ARA by not submitting accurate weekly sales reports or forwarding to Plaintiff their share of the proceeds from Uniglobe's sale of Plaintiff's traffic documents. (Am. Compl., Dkt. no. 6, ¶¶ 36-37). Plaintiff requests that a default judgment be entered against the Defaulting Defendants Renda and Kremer in the amount of $1,118,370.72. (Mot. for Default J., Dkt. no. 16, ¶ 1).

B.    Jurisdiction

Subject matter jurisdiction in this action is founded on diversity of citizenship under 28 U.S.C. Section 1332. As alleged, Plaintiff is a Delaware corporation with its principal place of business in Arlington, Virginia, all Defendants are citizens of California, and the amount in controversy exceeds $75,000. (Am. Compl, Dkt. no. 6, ¶¶ 1-10).

Plaintiff contends that personal jurisdiction over the defaulting Defendants Renda and Kremer is appropriate under Virginia's long-arm statute, Virginia Code Section 8.01-328.1, and consistent with the dictates of due process based on their contacts with Virginia. (Am. Compl., Dkt. no. 6, ¶ 28).

4

Exhibit 1
Page - 4

1.    *Plaintiff's Factual Bases for Personal Jurisdiction*

Plaintiff, operating out of Virginia, and Defendant Uniglobe, operating in California, entered into the ARA on May 10, 1983. (Am. Compl., Dkt. no. 6, ¶¶ 31-32). By 2002, Aloha Continental Tours & Travel ("Aloha"), a company operating out of Santa Ana, California, had owned and operated Defendant Uniglobe as a wholly-owned subsidiary. (Rev. Supp. Mem., Dkt. no. 44 at 2, ex. A Russell Aff. at ¶ 2, ex. B Taylor Aff. at ¶ 3, ex. 3 Costa Aff. at ¶ 3).[1] Aloha also owned and operated, A Better Airfare, which had substantial operations and a call-in reservation center in Newport News, Virginia. (Rev. Supp. Mem., Dkt. no. 44 at 2, ex. C at ¶ 4). As alleged, both Defaulting Defendants Renda and Kremer exercised full control over the daily operations of Aloha's companies from its base of operations in California: Defendant Renda was the Chairman and financial backer of Aloha, and Defendant Kremer held the title of Managing Director. (Rev. Supp. Mem., Dkt. no. 44 at 2, ex. A Russell Aff. at ¶¶ 4-5, ex. B Taylor Aff. at ¶¶ 5-6, ex. C Costa Aff. at ¶¶ 5-6).

With respect to Defendant Uniglobe, Plaintiff similarly alleges that both Defaulting Defendants Renda and Kremer have been "officer[s] and/or principal[s] of UNIGLOBE" and hold "ownership interest[s] in UNIGLOBE." (Am. Compl., Dkt. no. 6, ¶¶ 13,14). As part of their operation of Aloha, Plaintiff contends that from California Defendants Renda and Kremer

---

[1] Plaintiff's allegations regarding the ownership of Defendant Uniglobe are inconsistent. Plaintiff variously alleges that: (a) around 2000 former defendants Thomas Taylor and Marie Taylor "sold/or transferred ownership of Uniglobe to Defendants James F. Kriedler, Robert Kremer, Mario Renda and/or Anthony Renda" (Am. Compl., Dkt. no. 6,¶ 34); (b) Thomas Taylor and Marie Taylor both still "holds an ownership interest in Uniglobe" (Am. Compl., Dkt. no. 6, ¶¶ 11-12); and (c) "Aloha owned and operated Uniglobe as a wholly-owned subsidiary." (Rev. Supp. Mem., Dkt. no. 44 at 2, ex. A Russell Aff. at ¶ 2, ex. B Taylor Aff. at ¶ 3, ex. C Costa Aff. at ¶ 3).

5

Exhibit 1
Page - 5

directed activities into Virginia through Defendant Uniglobe by:

- ordering ticket stock from Plaintiff's headquarters in Arlington, Virginia,
- submitting false sales' reports to Plaintiff in Virginia, and
- communicating with "persons at ARC's Arlington, Virginia location."

(Rev. Supp. Mem., Dkt. no. 44 at 8).  Through these actions, Plaintiff contends that the

Defaulting Defendants "necessarily acceded" to the ARA between Plaintiff and Defendant

Uniglobe even though Defendants Renda and Kremer did not execute the ARA.  (Rev. Supp.

Mem., Dkt. no. 44 at 8-9).  Similarly, through the Defaulting Defendants' work at Aloha,

Plaintiff argues that Aloha's subsidiary, A Better Airfare, with an office in Newport News,

Virginia, made tax payments to the Treasurer of Virginia and the City of Hampton Roads and

operated a computer reservation system there.  (Rev. Supp. Mem., Dkt. no. 44 at 8).

      2.      *Plaintiff's Legal Arguments Supporting Personal Jurisdiction*

     Plaintiff argues that Virginia's long-arm statute confers personal jurisdiction over the

Defaulting Defendants because the cause of action arises directly from their (1) transacting

business in the Commonwealth, (2) causing tortious injury in the Commonwealth by an act or

omission in the Commonwealth, and (3) causing a tortious injury in the Commonwealth through

tortious conduct outside of the Commonwealth where they regularly solicited business, derived

substantial revenue from, and engaged in other persistent course of conduct in the

Commonwealth.  Va. Code. Ann. § 8.01-328.1(A)(1), (3), (4).  Plaintiff argues further that the

long-arm statute confers personal jurisdiction over the Defaulting Defendants because they used

"a computer or computer network located in the Commonwealth." Va. Code Ann. § 8.01-

328.1(B).

     Plaintiff also contends that this Court has personal jurisdiction over the Defaulting

6

Exhibit 1
Page - 6

Defendants through their contacts in the Commonwealth based on the due process clause of the

Fourteenth Amendment. Plaintiff claims that the Defaulting Defendants, operating from

California through Aloha, the parent company of Defendant Uniglobe, purposefully availed

themselves to jurisdiction in Virginia by, *inter alia*, ordering ticket stock from, submitting false

sales' reports to, and communicating with Plaintiff at their Arlington, Virginia location.

Moreover, Plaintiff suggests that the Defaulting Defendants further directed activity into Virginia

by operating Aloha, which possessed the company, A Better Airfare–which had some operations

in Virginia.

### III.    <u>Findings</u>

The Magistrate Judge finds that this Court cannot exercise personal jurisdiction over

Defendants Mario Renda and Robert Kremer because these defendants lack sufficient minimum

contacts with Virginia.

### A.    Raising Personal Jurisdiction *Sua Sponte*

This Court may raise the issue of personal jurisdiction over Defendants Renda and

Kremer *sua sponte*. The requirement that a court have personal jurisdiction over a defendant is

grounded in the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 413 (4th Cir. 2002)

(citing *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) ("[T]he

requirement that a court have personal jurisdiction flows from the Due Process Clause and

protects an individual liberty interest.")). Accordingly, the burden of proving jurisdictional facts

lies with the plaintiff. *Le Donne v. Gulf Air, Inc.*, 700 F. Supp. 1400, 1411 (E.D. Va. 1988)

("Plaintiff bears the burden of demonstrating personal jurisdiction once the exercise of

jurisdiction has been questioned.") (citing *Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 704 (4th

7

Exhibit 1
Page - 7

Cir. 1970), *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

Where a plaintiff seeks a judgment by default against a defaulting defendant, a district

court must determine whether it has personal jurisdiction over the defaulting defendant:

> [A] judgment entered without personal jurisdiction is void. It should therefore be
> apparent that a district court has the duty to assure that it has the power to enter a
> valid default judgment. . . When entry of default is sought against a party who has
> failed to plead or otherwise defend, the district court has an affirmative duty to
> look into its jurisdiction both over the subject matter and the parties.

*System Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001)

(holding that a district court may raise the issue of personal jurisdiction *sua sponte*) (internal

citations omitted); *Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772

(10th Cir. 1997) ("[A] district court must determine whether it has jurisdiction over the defendant

before entering judgment by default against a party who has not appeared in the case.") (citing

*Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *In re Tuli*, 172 F.3d 707,

712 (9th Cir. 1999)("[W]hen a court is considering whether to enter a default judgment, it may

dismiss an action *sua sponte* for lack of personal jurisdiction."); *Whittaker v. Winner*, 264 F.

Supp. 2d 281, 281 (D. Md. 2003) (finding that dismissal was appropriate, *sua sponte*, for lack of

personal jurisdiction where there were no allegations of personal jurisdiction in the complaint

and plaintiff failed to verify personal jurisdiction upon the court's request); 20 Wright & Miller,

Fed. Prac. and Pro. § 8 (2004) ("The court, whether trial or appellate, is obliged to notice want of

jurisdiction on its own motion.") See also, *Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1,

4 (1st Cir. 1988); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994).

    B.    <u>Analytical Framework for Personal Jurisdiction</u>

Federal Rule of Civil Procedure 4(k)(1)(A) permits a federal court to exercise personal

8

Exhibit 1
Page - 8

jurisdiction in the same manner as the forum's state courts. For a state court to exercise personal

jurisdiction, the court must find that a state statute confers jurisdiction, and that the exercise of

jurisdiction is consistent with the Fourteenth Amendment's due process requirements.

*D'Addario v. Geller*, 264 F. Supp. 2d 367, 378 (E.D. Va. 2003). Similarly, where this Court is

asked to exercise personal jurisdiction over nonresident defendants, this Court must examine

whether the defendant's conduct falls within the reach of Virginia's long-arm statute, and

whether the exercise of personal jurisdiction over the defendant violates due process:

> The Fourth Circuit has laid out the analysis that courts should apply when
> determining whether personal jurisdiction can be obtained pursuant to a long-arm
> statute. The Court must first "determine whether the statutory language applies to
> [each] defendant; second, if the statutory language applies, [the court] must
> determine whether the statutory assertion is consistent with the due process clause
> of the Constitution."

*Geller*, 264 F. Supp. 2d at 378 (quoting *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.

1990)).

Virginia's long-arm statute extends jurisdiction to the fullest extent permitted by the Due

Process Clause. *Id.* For this reason, a court need not apply the traditional two-step analysis

formulaically, but may consider first whether a statutory assertion is consistent with the due

process clause:

> Because Virginia's long-arm statute extends personal jurisdiction to the extent
> permitted by the Due Process Clause, the statutory inquiry necessarily merges with
> the constitutional inquiry, and the two inquiries essentially become one. The
> question, then, is whether the defendant has sufficient minimum contacts with [the
> forum] such that the maintenance of the suit does not offend traditional notions of
> fair play and substantial justice.

*Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal citations omitted); See

also, *Bassett Furniture Indus., Inc. v. Sexton*, 596 F. Supp. 454, 456 (W.D. Va. 1984) (dispensing

9

Exhibit 1
Page - 9

with traditional two-step analysis and examining the due process step first because Virginia's long-arm statute is limited by the parameters of due process).

Where a defendant maintains systematic and continuous contacts with Virginia, the court could exercise general personal jurisdiction over the defendant for his acts committed either inside or outside of Virginia. *Id.* at 378-79 (citing *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). Otherwise, a court may exercise specific personal jurisdiction over the defendant where his contacts "relate to the cause of action and create a substantial connection with the forum." *Id.*

For this Court to exercise personal jurisdiction over a nonresident defendant pursuant to the Due Process Clause of the Fourteenth Amendment, the defendant must have "sufficient minimum contacts" with the forum state, such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To satisfy due process when evaluating specific personal jurisdiction over the nonresident defendant, this court must consider the nature and quality of the defendant's significant contacts with Virginia in relation to the specific cause of action. *Production Group*, 337 F. Supp. 2d at 793-94; *Heathmount A.E. Corp v. Technodome.com*, 106 F. Supp. 2d 860, 865 (E.D. Va. 2000). Within the context of specific personal jurisdiction, the Fourth Circuit examines:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (internal citations omitted).

10

Exhibit 1
Page - 10

As a general rule, due process is satisfied when a nonresident defendant purposefully conducts activities within the forum, benefits from the privileges and protections of the forum state, and as a result, has clear notice that he could be subject to suit there. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[T]here must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws."); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (The nonresident defendants' contacts with the forum State must be such that the defendants "should reasonably anticipate being haled into court there."). However, the nonresident defendant's contacts may not be based on random, fortuitous, or attenuated contacts:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475-76 (internal citations omitted).

If a court decides that a defendant purposefully established minimum contacts with the forum state, then the court may consider whether the exercise of personal jurisdiction over the defendant comports with "fair play and substantial justice." *Id.* at 476-77. The factors to consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the policy interest in obtaining the most efficient resolution. *Id.* (internal citations omitted).

11

Exhibit 1
Page - 11

C.    Analysis

The Magistrate Judge finds that it would violate due process for this court, sitting in the Eastern District of Virginia, to exercise jurisdiction over Defendants Mario Renda and Robert Kremer.

Plaintiff has alleged that the Defaulting Defendants, from California, directed the following business-related acts to Virginia: ordering ticket stock from Plaintiff, submitting false sales' reports to Plaintiff, and communicating with Plaintiff. The Defaulting Defendants committed these acts while "officers and/or principals" of Defendant Uniglobe, and as a consequence, had undertaken express fiduciary duties to hold in trust ARC's traffic documents. (Am. Compl., Dkt. no. 6, ¶¶ 72-73, 77-78).

Because there are no valid grounds to assert general personal jurisdiction over the Defaulting Defendants, this Court must consider the nature and quality of the Defaulting Defendants' contacts with Virginia as they relate to the cause of action. See *Geller*, 264 F. Supp. 2d at 378-79. The gravamen of Plaintiff's cause relates to actions of Defendant Uniglobe and the other Defendants with respect to the ARA between Uniglobe and Plaintiff. Any contacts in Virginia involving Aloha's wholly-owned subsidiary, A Better Airfare, are too attenuated to be factored into the minimum contacts' analyses for specific personal jurisdiction over the Defaulting Defendants. Simply put, A Better Airfare's contacts with Virginia do not relate to Plaintiff's action against the Defaulting Defendants, and as such, its contacts may not be attributed to the Defaulting Defendants.

The Plaintiff acknowledges that Defendants Mario Renda and Robert Kremer did not execute the ARA between Defendant Uniglobe and Plaintiff, and does not assert its first count,

12

Exhibit 1
Page - 12

Breach of Contract (Count 1), against them. (Am. Compl., Dkt. no. 6, ¶¶ 60-68) (asserting that former Defendants Marie A. Taylor, Thomas K. Taylor, Joseph Russell, and Frank J. Costa and current Defendant Uniglobe breached the ARA with Plaintiff). Rather, Plaintiff argues that the Defaulting Defendants "necessarily acceded" to the ARA between Plaintiff and Defendant Uniglobe because Uniglobe was acquired by Aloha where Defendant Mario Renda was Chairman and Defendant Robert Kremer was Managing Director. (Rev. Supp. Mem., Dkt. no. 44 at 8). On the premise that the Defaulting Defendants' ratified the ARA, Plaintiff asks that this Court exercise its jurisdictional power over the Defaulting Defendants because they ordered ticket stock from Plaintiff's business location in Virginia, submitted false sales' reports to Plaintiff's business location in Virginia, and called individuals at Plaintiff's business location in Virginia. (Rev. Supp. Mem., Dkt. no. 44 at 8).

In *Le Bleu Corp. v. Standard Capital Group, Inc.*, the Fourth Circuit Court of Appeals applied the minimum contacts analysis where a contract was signed in the forum state and the California defendant visited plaintiff twice in the forum state, exchanged communications between California and the forum state, and mailed a payment to the plaintiff in the forum state. *Le Bleu Corp. v. Standard Capital Group, Inc.* 11 Fed.Appx. 377, 380, 2001 WL 672066, *1-2 (4th Cir. 2001). The Fourth Circuit, noting that a defendant's contract with a resident in a forum state does not automatically give rise to specific personal jurisdiction, affirmed that the defendant's contacts were only negligible, and as such, did not give rise to personal jurisdiction. *Id.* (citing *Burger King*, 471 U.S. at 478); See also, *Autoscribe Corp. v. Goldman and Steinberg*, 47 F.3d 1164, 1995 WL 56662, at *1 (4th Cir. 1995) (finding a lack of minimum contacts over a nonresident defendant where it entered into a licensing agreement with the plaintiff who would

13

Exhibit 1
Page - 13

provide services from the forum state, telephoned the plaintiff in the forum state, and requested sales information from the plaintiff in the forum state).

Like *Le Bleu*, the Magistrate Judge finds that the Defaulting Defendants' contacts with Virginia are only negligible and lack sufficient cause for this Court to restrain the Defaulting Defendants' liberty interests by compelling them to submit to the jurisdiction of this Court. The Defaulting Defendants alleged minimum contacts do not connote that they purposefully directed activities into Virginia to such an extent they should reasonably expect to be subject to suit here. As alleged, Defendants Mario Renda and Robert Kremer, as officers of Aloha which owned Defendant Uniglobe as a wholly-owned subsidiary, performed certain administrative tasks in furtherance of the ARA–like ordering ticket stock, mailing sales reports, and contacting Plaintiff. Like *Le Bleu*, the Defaulting Defendants exchanged communications and documents from California to the forum state.

Unlike *Le Bleu*, however, the Defaulting Defendants did not even sign the contract or visit the forum state in connection with the contract. Assuming that the Defaulting Defendants' did accept and ratify the ARA through their actions, their contacts with Virginia are even less than those presented in *Le Bleu*. Consequently, it is presumptively unreasonable to require anyone to submit to the jurisdiction of a foreign court where, as here, the contacts are limited merely to exchanging communications with an entity in the foreign state (*i.e.*, ordering stock, submitting reports, and contacting via telephone). In other words, the Defaulting Defendants' contacts are at most, negligible and, at best, attenuated. For these reasons, it would violate due process to require Defendants Mario Renda and Robert Kremer to submit to the burden of litigating this action in Virginia.

14

Exhibit 1
Page - 14

**IV.    Conclusion and Recommendation**

The Magistrate Judge concludes that this Court lacks personal jurisdiction over Defendants Mario Renda and Robert Kremer based on their insufficient contacts with this forum. Consequently, the Magistrate Judge recommends that this action be dismissed without prejudice as to Defendants Mario Renda and Robert Kremer.

**V.    Notice**

All the parties, Plaintiff, Defendant Mario Renda, Defendant Robert Kremer, and the remaining Defendants (Uniglobe Fairway Travel, Inc., James F. Kreidler, and Anthony Renda) are advised that exceptions to this Supplemental Report and Recommendation pursuant to 28 U.S.C. Section 636 and Federal Rule of Civil Procedure 72(b) must be filed within ten (10) days after service. A failure to object waives appellate review of a judgment based on this Supplemental Report and Recommendation.

 

 

Barry R. Poretz
United States Magistrate Judge

March 2, 2005
Alexandria, Virginia

15

Exhibit 1
Page - 15

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

AIRLINES REPORTING CORPORATION,    )
    **Plaintiff,**    )
        )
    v.    )    Civil Action No. 1:04cv622
        )
UNIGLOBE FAIRWAY TRAVEL, INC., et al.,    )
    **Defendants.**    )

*FILED*
*MAR 2 1 2005*
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## ORDER

Upon consideration of the March 2, 2005 Report and Recommendation of the United States Magistrate Judge designated to conduct a hearing in this matter, no objections having been filed, and upon an independent *de novo* review of the record, it is hereby **ORDERED** that the Court adopts as its own the findings of fact and recommendation of the United States Magistrate Judge, as set forth in the March 2, 2005 Report and Recommendation.

Accordingly, it is hereby **ORDERED** that the instant action is **DISMISSED** without prejudice as to defendants Mario Renda and Robert Kremer based on a lack of personal jurisdiction.

The Clerk is **DIRECTED** to send a copy of this Order to defendants and to all counsel of record.

T. S. Ellis III
United States District Judge

Alexandria, VA
March 21, 2005

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT
BY_____
DEPUTY CLERK

Exhibit 2
Page - 16

49