**SAMPSON & ASSOCIATES**
Bryan D. Sampson, Esq. (#143143)
Mary L. Fickel, Esq. (#221872)
2139 1st Avenue
San Diego, California 92101
Tel. (619) 557-9420 / Fax (619) 557-9425
bsampson@sampsonlaw.net

Attorneys for Judgment Creditor
AIRLINES REPORTING CORPORATION

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRLINES REPORTING CORPORATION, | Case No. 08-MC-00088 |
| Plaintiff/Judgment Creditor, | **DECLARATION OF SUZANNE LEWIS IN OPPOSITION TO MOTION TO VACATE JUDGMENT** |
| v. | |
| COMMERCIAL TRAVEL CORPORATION d/b/a MATLOCK TRAVEL, et al., | Date:   July 25, 2008<br>Time:   10:00 a.m.<br>Ctrm:   1, 4th Floor<br>Judge: Hon. Irma E. Gonzalez |
| Defendants/Judgment Debtors. | |

I, Suzanne Lewis, declare:

1.      I am an attorney licensed to practice law in the State of Virginia.  I am an associate of Bonner Kiernan Trebach & Crociata, LLP, attorneys of record for Plaintiff/Judgment Creditor Airlines Reporting Corporation in the above-captioned matter against Defendant/Judgment Debtor Mario Renda to enforce the judgment, in the sum of over $700,000.00 entered by the United States District Court, Eastern District of Virginia.

2.      If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge, except as to those matters stated upon information and belief, and as to those matters I am informed and believe thereon allege that they are true and correct based upon my reasonable investigation.

/ / /

/ / /

1

**Exhibits**

3.     Attached hereto as Exhibit "A" is a true and correct copy of the Announcement of Merger.

4.     Attached hereto as Exhibit "B" is a true and correct copy of the Letter of Intent for the purchase of Defendant Commercial Travel.

5.     Attached hereto as Exhibit "C" is a true and correct copy of the Indemnification Agreement concerning the purchase of Defendant Commercial Travel.

6.     Attached hereto as Exhibit "D" is a true and correct copy of the real property Assessment Record for 7084 Miramar Road, Suite 100, San Diego, California 92121, owner information Commercial Travel Corporation.

7.     Attached hereto as Exhibit "E" is a true and correct copy of the Affidavit of Custodian of Records and relevant excerpts of cleared checks for the U.S. Bank Commercial Travel bank account.

8.     Attached hereto as Exhibit "F" is a true and correct copy of the third party Charles Carter's correspondence regarding default on payments, dated January 12, 2004.

9.     Attached hereto as Exhibit "G" is a true and correct copy of correspondence to, among others, Defendant Renda regarding ARC liabilities and Defendants' current accounting practices, dated September 11, 2003.

10.    Attached hereto as Exhibit "H" is a true and correct copy of correspondence to Defendant regarding payments to First Mutual from Defendant Commercial Travel, dated December 22, 2003.

**Factual Background**

11.    I am informed and believe that Plaintiff ARC serves as a national clearinghouse for issuing standardized blank ticket stock documents and other standardized forms ("ARC traffic documents") to ARC accredited travel agents to be used as air passenger tickets by the travel agents' customers. ARC maintains an agency list of persons and entities accredited to serve as travel agents and to issue ARC traffic documents.

12.    I am further informed and believe that it is Plaintiff ARC's regular practice to enter into Agent Reporting Agreements ("ARA") with the travel agent entities that are accredited to issue ARC traffic documents. The ARA governs the issuance of ARC traffic documents.

Case No.08-MC-00088
DECLARATION OF SUZANNE LEWIS IN OPPOSITION TO MOTION TO VACATE JUDGMENT
S:\Company Files\Clients - Open\ARC\McCord Renda-Kremer\Pleading\Federal\Opp.Vacate\SL.wpd

13.    I am further informed and believe that each travel agent entity must undergo a separate accreditation process, which includes an inquiry regarding the financial and criminal background of the principals/owners and key employees of the travel agent entity, including an inquiry regarding conviction for financial crimes. If revealed, a criminal history for a principal/owner of an entity may preclude the entities accreditation or approval of a change of ownership. In other words, based upon Defendant's past criminal conviction for, *inter alia*, money laundering, Defendant Commercial Travel may not have qualified for an ownership change with Plaintiff if Defendant Renda was listed with Plaintiff as an owner, director, and/or key employee of Defendant Commercial Travel.

14.    I am further informed and believe that in or around 1999, Defendant Renda, among others, acquired Defendant Commercial Travel Corporation dba Matlock Travel and dba Costa Travel from Thomas Carter, Stephanie Carter and Thomas S. Carter.

15.    Specifically, I obtained documents through the course of this litigation which illustrate the following:

• Defendant Renda is listed in the announcement of the acquisition of Defendant Commercial Travel;

• Defendant Renda appears to be a signatory to the Letter of Intent for Commercial Travel regarding the sale;

• Defendant Renda appears to be a signatory to the Indemnification Agreement with the Carter's regarding the sale.

• Defendant Renda was a recipient of correspondence from third party Charles Carter regarding a default under the terms of the sale of Defendant Commercial Travel;

• Defendant Renda was a recipient of correspondence sent on behalf of the Chief Financial Officer for Defendant Commercial Travel regarding various ARC liabilities, their financial practice of "floating" ARC monies, delinquent rental payments (per Defendant Renda's instructions) for the Virginia location and their intentional practice of misstating the financial statements (Commercial Travel simply "wrote off" the ARC liabilities without any payment to Plaintiff ARC) and

• Defendant was the recipient of correspondence regarding a request for financial

statements that show that third party First Mutual (owned by Defendant Renda) obtained checks written from the Commercial Travel account.

16.    In submitting and/or causing to be submitted weekly sales reports as required under the ARA, Defendant Renda can been seen as having ratified or otherwise agreed to the terms of the ARA and thereby, was required to hold funds from the sale of ARC traffic documents in trust.

17.    Upon information and belief, Defendant Renda, among others, violated the ARA as follows:

- purposefully failing to properly report all of the ticket sales, including both failing to include all sales on weekly sales reports, and reporting certain sales for which funds were not made available to ARC as required under the ARA;

- using Plaintiff's money for personal benefit;

- conspired to and acquiesced in the filing of falsified reports, traffic documents, or other documents;

- depriving Plaintiff ARC of monies due from the sale of ARC traffic documents; and

- undertaking fiduciary duties to ARC to hold proceeds of sales of ARC traffic documents in trust until paid to ARC via draws on designated bank accounts.

18.    Through the litigation of this case, I learned that Defendant Renda is also the principal owner of First Mutual, LLC.  I am also informed that Defendant Renda made all of the business decisions for Commercial Travel, and that Defendant Renda came to the Commercial Travel office at least once per week while the agency was still in operation.  I learned this information through my interviews with key employees of the agency.

19.    I recently learned that Defendant Commercial Travel is listed as the property owner for the property that was allegedly leased from First Mutual, LLC.  In addition, it appears from correspondence to, *inter alia*, Defendant Renda, First Mutual, LLC wrongfully obtained funds that belonged to Plaintiff from the sale of ARC traffic documents.  Additionally, First Mutual, LLC has the same business address as the address listed for the registered agent for service of process upon Defendant Commercial Travel.

20.    I discovered through document subpoenas that during the course of Defendant's involvement with Defendant Commercial Travel and third party First Mutual, LLC, Defendant wrongfully obtained at least $146,000.00, representing funds due and owing to ARC form the sale of

ARC traffic documents as follows:

| Payments to Defendant through First Mutual, LLC | | |
|---|---|---|
| Date | Check # | Amount |
| 12/1/03 | 10084 | $39,181.40 |
| 11/24/03 | 10075 | $43,865.19 |
| 11/18/03 | 10073 | $62,953.41 |
| | **Total** | **$146,000.00** |

21.    On September 4, 2007 the United States District Court, Eastern District of Virginia, entered judgment in favor of Plaintiff ARC and against, *inter alia*, Defendant Renda.  Judgment was entered in the principal sum of $701,942.81 as a result of Defendant's involvement in filing false reports and based upon his fraud against Plaintiff.

22.    **The Uniglobe Case**.  Defendant Renda did not appear in the Uniglobe matter.  Instead, the Court requested briefing by Plaintiff ARC on whether Virginia's long arm statute permitted the exercise of jurisdiction over Defendant Renda.  Thereafter, the Court determined, without prejudice, under the facts known to Plaintiff at the time of the ruling, that the Virginia district court did not have personal jurisdiction over Defendant.

23.    Although I later obtained additional evidence that I believe would have withstood the Uniglobe court's scrutiny on the issue of personal jurisdiction, Plaintiff entered into a settlement agreement with third party Anthony Renda, Defendant Renda's son.  As a result of the settlement, Plaintiff determined that it was not cost efficient to bring further motions regarding the court's in personam jurisdiction over Defendant Renda.  Thereafter, the Virginia district court entered an order on the settlement agreement and removed the Uniglobe case from its active docket.  To date, third party Anthony Renda has not fully and completely performed under the terms of the Uniglobe settlement agreement.

24.    The facts surrounding the issue of Virginia's in personam jurisdiction over Defendant in ARC v. UniGlobe, by the U.S. District Court, Eastern District of Virginia, are not the same as the facts regarding personal jurisdiction in this matter.  The issues and the identity of the parties differ from this matter.  The facts and circumstances of Debtor's involvement in the UniGlobe matter differ

1  significantly from the facts and circumstances of this case.    The facts and circumstances that

2  differentiate the two matters include, among others, the following:

| **A.R.C. v. UniGlobe** | **A.R.C. v. Commercial Travel** |
|---|---|
| Agent Bank information: Grossmont Bank | Agent Bank information: US Bank |
| Different debt obligations to Plaintiff: Debt | Different debt obligations to Plaintiff: Debt |
| *Unreported Sales:* $1,379.00 *Dishonored Drafts*: $1,112,394.21 *Chargebacks*: $4,336.50 *Misc. Charge Orders*: $260.51 | *Unreported Sales:* $1,462.31 *Dishonored Drafts*: $682,088.45 *Chargebacks*: $18,023.65 *Misc. Charges*: $368.40 |
| Uniglobe Accreditation No.: 05577191 | Matlock Accreditation No.: 2952114 Costa Travel Accreditation No.: 0565707 |
| Date of approved accreditation: 5/10/83 | Dates of approved accreditation: 3/7/91 (Matlock Travel); 12/20/83 (Costa Travel) |

12        I declare under penalty of perjury under the laws of the United States of America and the State

13  of California that the foregoing is true and correct.  This Declaration is executed this 14th day of July,

14  2008, in the District of Columbia.

By:  _____
Suzanne Lewis,  Esq.

6

DECLARATION OF SUZANNE LEWIS IN OPPOSITION TO MOTION TO VACATE JUDGMENT
S:\Company Files\Clients - Open\ARC\McCord Rends-Kremer\Pleading\Federal\Opp. Vacate\SL.wpd

# EXHIBIT "A"

## Announcement of Merger between Aloha Continental Travel
## And Commercial Travel Corporation

After many months of discussions, it is our joint pleasure to officially announce the merger of Aloha Continental Travel and Commercial Travel Corporation that will be effective Monday, December 6, 1999.

**Aloha Continental Travel**, located in Santa Ana, has been a Wholesale Airline Ticket Consolidator for the past 14 years. For over a decade they have had contracts with Continental, Frontier, American, EVA, British Midland and soon Canada 3000 for last minute travel (from 0 to 7 days from departure) at discounted rates, as well as superior technologies for both Internet Bookings and In Office systems. Aloha predominantly services professional travel agencies throughout the country with a current client base of over 3000 active agency accounts.

**Commercial Travel Corporation** is a retail travel services company with 21 locations from San Diego to Winnipeg Canada. The various companies that are part of CTC are Costa Travel in San Diego, Matlock Travel in Las Vegas, as well as Greystone Travel, Nevada Power, Team Travel, 800-Go Cheap, Motor Coach International, Allstate Tickets, an exclusive fulfillment agreement with Sprint for their Customer Rewards Program and a network of over 800 Independent Travel Agents throughout the country.

By combining these two companies, the whole will be greater than the sum of the parts. Aloha brings a vast number of new products and services to the existing and future agents and programs of CTC. This will clearly give CTC agents and affiliates a strong competitive edge. CTC brings to Aloha a new channel of distribution for their airline contracts which will dramatically increase their already strong relationships with the airlines. Combined the new company will be one of the largest travel entities in California.

There will be no dramatic changes to the day-to-day operation of either company, only improved efficiencies and support. Frank Costa will remain as President of CTC and Chuck Carter will become Vice-Chairman. Jim Kreidler, President of Aloha Continental Travel will become CEO of CTC. Chuck, who lives in Orange County, will be working from Aloha's Santa Ana offices on major corporate projects.

We are all excited at the joining of these two great companies and we look forward to starting the new millennium which will bring great opportunity for us all.

**Aloha Continental Travel**

Jim Kreidler, President
Bob Kremer, Managing Director
Mario Renda, Director of Marketing
Anthony Renda, Vice President

**Commercial Travel Corporation**

Chuck Carter, CEO
Frank Costa, President
Randy Wight, CFO

# EXHIBIT "B"

## LETTER OF INTENT

TO:      CHUCK CARTER, COMMERCIAL TRAVEL CORPORATION

FROM:    MARIO RENDA, ALOHA CONTINENTAL TRAVEL

SUBJECT: ACQUISTION OF CTC BY ALOHA CONTINENTAL TRAVEL

DATE:    11/2/99

### BASIC POINTS OF ACQUISITION

- Aloha Continental Travel and Tours, Inc. (ACTTI) intends to purchase 100% of the stock of Commercial Travel Corporation (CTC). Both parties acknowledge that based on acceptance of this Letter if Intent that ACTTI will conduct its due diligence and upon completion and acceptance they will enter into contract and close at the earliest possible date.

- ACTTI agrees to purchase CTC for a total purchased price of One Million, Two Hundred Thousand and 00/100 ($1,200,000), subject to completion of due diligence and the review and acceptance of current financials, previous years tax returns, etc.

- Terms are to be as follows:

  o  $600,000 paid Immediately Upon Closing

  o  Balance of $600,000 to be paid as follows:

     $100,000 per year, for a three year period, paid at $ 5,000 per month, with a $40,000 Lump Sum payment made each year within 60days of the anniversary date of the closing if full balance not paid off, OR balance paid in full at the time of an Initial Public Offering

     No Loan Prepayment Penalty

     Chuck Carter and Family to remain on CTC Medical Policy paid by CTC

     Balloon Payment of $300,000 to be made at end of 3rd year

  o  CTC authorizes ACTTI to complete contract negotiations with CRS vendor of choice

  o  CTC Corporate Entity to be kept intact and ownership of said entity to be transferred to ACTTI

  o  Chuck Carter to remain as management consultant for transition. Frank Costa to remain with company at current salary.

  o  Chuck Carter to be placed on contract to act as agent of ACTTI to acquire additional agencies for a finders fee of ¼ of 1% of the Monthly Gross of Agency acquired, or $10,000, whichever is higher

This offer is valid until 11/4/99.

Agreed to and Accepted By:                      Agreed to and Accepted By:

_____ Date: 11/2/99          _____ Date: 11/2/99

Commercial Travel Corporation                   Aloha Continental Travel and Tours, Inc.

# EXHIBIT "C"

# INDEMNIFICATION AGREEMENT

THIS AGREEMENT is entered into as of the first date written at the end hereof, by and among Charles T. Carter and Stephanie C. Carter (hereafter the "Carters"); the individuals signing this Agreement in the right hand column of the last page hereof (hereinafter the "Indemnitors"); and Aloha Continental Travel and Tours, Inc. (hereinafter "Aloha").

WHEREAS, the Carters and some or all of the Indemnitors may be the subject of claims asserted by existing and potential creditors of Commercial Travel Corporation (hereinafter the "Creditors"), including but not limited to the Airlines Reporting Corporation.

WHEREAS, the Carters have potential claims for indemnity from Aloha and potential claims for indemnity from the Indemnitors, which claims the parties desire to compromise and settle.

THEREFORE, FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, the Carters and Indemnitors do hereby solemnly covenant, contract and agree as follows:

1.    From the effective date hereof, Indemnitors and Aloha, jointly and severally, shall indemnify, defend and hold harmless the Carters against any and all claims, judgments, expenses and damages, including, but not limited to, actual and punitive damages asserted or to be asserted by the Creditors or awarded to the Creditors. This obligation of the

-2-

Indemnitors and Aloha shall include, but not be limited to, paying when due, without demand, (a) all costs of representation and/or defense of the Carters including, without limitation, all attorneys fees and expenses of counsel for the Carters, and (b) any and all judgments and other amounts assessed by a Court or the Travel Agent Arbiter against the Carters and future fees and expenses of experts retained by the Carters who may be called as witnesses in litigation brought by the Creditors.

2.     This Agreement is made without admission of liability of the Carters to the Creditors, nor shall it be interpreted as an admission of liability.  In fact, the Carters expressly deny any such liability whatsoever to the Creditors.  Indemnitors and Aloha shall inform the Creditors, as requested by the Carters from time to time, that the Carters are not liable to the Creditors.

3.     Indemnitors and Aloha agree that, in the event a settlement is effected with the Creditors, any payment made by the Indemnitors pursuant thereto shall be made by them collectively on behalf of the Carters.  However, no such settlement shall be made unless the Indemnitors obtain from the Creditors full, unqualified and complete release of the Carters from all claims asserted, contingent or otherwise.

4.     In the event of default in the terms, covenants and conditions hereof, the defaulting party agrees to pay the reasonable attorneys fees and costs of the non-defaulting party incurred in the enforcement of the terms hereof.

-3-

5.    Nothing in this Agreement shall affect the obligations of Aloha to pay the debts set forth in the letter agreement of April 24, 2003, between Charles T. Carter and Aloha, on time and in full.    The Indemnitors, jointly and severally, hereby personally guarantee said obligations.    However, if Aloha pays the ARC default of Commercial Travel Corporation prior to October 31, 2003, the amount due on said agreement shall be reduced to $75,000, if said amount is paid to the Carters on or before October 31, 2003, by cashier's check or wire transfer.

6.    Aloha hereby consents to Mark Pestronk's representation of the Carters in this matter, even though Pestronk reviewed an Aloha ARC application for change of ownership and advised Aloha in connection therewith.

7.    At the request of the Carters, the Indemnitors shall execute such documents as deemed necessary by the Carters to give them a security interest in the Indemnitors' residences or other collateral of equivalent value; provided that the Carters acknowledge that such security interest shall be subordinate to any existing mortgages, and provided that the Carters shall pay the costs of recording any new mortgages.

8.    In consideration for the promises of Indemnitors and Aloha herein, the Carters shall forego enforcement of their indemnification rights under Section 6.4 of the November 30, 1999, Stock Purchase Agreement between them and Aloha, as long as the Indemnitors are not in breach of this Agreement.

-4-

9.      This Agreement and the said letter agreement contain the full and complete agreement of the parties and no modification of amendment hereto may be made except in writing duly executed by the parties hereto with specific reference made in said writing that it is an amendment or modification of this Agreement.

IN WITNESS WHEREOF the parties have executed this Agreement.

**Charles T. Carter**

Date: 10/10/2003

**Robert Kremer**

Date: 9-25-03

**Stephanie C. Carter**

Date: 10/10/03

**Mario Renda**

Date: 9/26/03

**Aloha Continental Travel and Tours, Inc.**

By: _____
Robert Kremer

Title: _____

Date: 9-25-03

# EXHIBIT "D"

# Assessment Record For SAN DIEGO County

## Owner Information

**Name:** COMMERCIAL TRAVEL CORPORATION (COMPANY/CORPORATION)
DBA COSTA TRAVEL (COMPANY/CORPORATION)
**Address:** 7084 MIRAMAR RD STE 100
SAN DIEGO, CA 92121-2343
SAN DIEGO COUNTY

## Property Information

**Property Address:** 7084 MIRAMAR RD STE 100
SAN DIEGO, CA 92121-2343
SAN DIEGO COUNTY
**Land Use:** COMMERCIAL (GENERAL)

## Legal Information

**Assessor's Parcel Number:** 343-111-36 7013408000

## Assessment Information

**Assessment Year:** 2003
**Assessed Improvement Value:** $55,000
**Total Assessed Value:** $55,000

## Tax Information

**Tax Rate Code:** 8-012

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Copyright© 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT "E"

# AFFIDAVIT OF CUSTODIAN OF RECORDS

STATE OF MINNESOTA    )
                        ) ss.
COUNTY OF HENNEPIN   )

      I, _Lorita Sajous_, being duly sworn, depose and state as follows:

      1.     I am the Legal Records Coordinator of U.S. Bank National Association, a corporation duly organized and existing under the laws of the United States, with offices at 800 Nicollet Mall, Minneapolis, Minnesota 55402, and as such have been designated as the Custodian of Records for the purpose of responding to the attached Subpoena Duces Tecum.

      2.     The documents delivered with this Affidavit in response to the Subpoena Duces Tecum represent true and correct copies of documents which are in our files. These records were prepared in the ordinary course of business at or near the time of the act, condition or event.

      3.     The documents delivered together with this Affidavit represent a complete response to the Subpoena Duces Tecum as of this date. A full and complete search has been performed to locate all documents which fall within the purview of the Subpoena Duces Tecum, and I am not aware of the existence of any further documents which would fall within the boundaries of the Subpoena Duces Tecum.

      DATED this _5th_ day of _December_, 20 _05_.

Bank records for:

Commercial Travel Corporation
( EIN: 88-0287030)

_Lorita Sajous_
Custodian of Records

      Subscribed and sworn to before me this _5th_ day of _December_, 20 _05_.

_Jodi M Barlow_
Notary Public

My Commission Expires:

_1/31/2008_

JODI MARIE BARLOW
Notary Public
Minnesota
My Commission Expires January 31, 2008

## U.S. Bank Confidential Communication



Requested by: Lorita Sajous

This check image contains confidential information. If you print this image, please store it in a secure place to avoid unauthorized usage of this information. Increased security awareness when discarding or destroying this document is recommended.



**U.S. Bank Confidential Communication**



Requested by: Lorita Sajous

This check image contains confidential information. If you print this image, please store it in a secure place to avoid unauthorized usage of this information. Increased security awareness when discarding or destroying this document is recommended.

| **Item #7** | | |
|---|---|---|
| **Account No.:** 153492136533 | **Check No.:** 10075 | **Sequence No.:** 7536951702 |
| **Amount:** $43865.19 | **Routing No.:** | **Date:** 11/24/2003 |

**Front:**



**Back:**

## U.S. Bank Confidential Communication



Requested by: Lorita Sajous

This check image contains confidential information. If you print this image, please store it in a secure place to avoid unauthorized usage of this information. Increased security awareness when discarding or destroying this document is recommended.

**Item #10**
**Account No.:** 153492136533          **Check No.:** 10073          **Sequence No.:** 7434634419
**Amount:** $62953.41               **Routing No.:**            **Date:** 11/18/2003
**Front:**



# EXHIBIT "F"

January 12, 2004

Mr. Bob Kremer
Mr. Jim Kreidler
Mr. Mario Renda

Gentlemen:

Please give me a call at (714) 345-8362 or E-mail me at charlestcarter@sbcglobal.net and tell me your plans for paying ARC, paying the $10,000 bounced check signed by Mario's son and paying the note owed to me for the purchase of Commercial Travel Corporation.

Please contact me.  Thank you.


Respectfully,


Chuck Carter

# EXHIBIT "G"

**Lisa Russell**

**From:**    joe Russell [joe@simplenet.com]
**Sent:**    Thursday, September 11, 2003 10:45 AM
**To:**       lrussell@costatravel.com
**Subject:** check this out

This is the letter I sent to Bob, Mario, Norm and Jim

Thursday 9/11/2003 9:30 PST

We are in a holding pattern while Suntrust and BofA make up their minds…We should have at least a million dollars in the Suntrust account this morning, but are unable to verify that. I have spoke to both Kevin Roberts and Cynthia McCune this morning and am awaiting some kind of information.

Suntrust has told BofA that the checks written yesterday to cover ARC's will be returned. Based on that, we need to prepare for the likelihood that the Aloha, Costa, Matlock, Uniglobe, and possibly the VA arc will be returned today. I'm not sure what the result of that will be, and I cannot guarantee when the Suntrust funds will become available. If Suntrust returns the check deposited into Aube' his line of credit may cover until we can get him certified funds.

Current ARC liabilities are as follows:

Aloha $98138.49
Costa $73032.62
Matlock $170974.11
Uniglobe $366824.14
Virginia $167254.96
Total $876224.32

BofA has already returned some checks, including Chuck Carter's 10K note payment, Bob Aube's paycheck, and at least one Aloha employee's paycheck…we have also been unable to send the wires to Best Fares…We are currently about 80K behind with them…McClure is also looking for his payment…Ken Penrose is also screaming about the VA rent that was bounced, and is being held per Mario's instruction. Also the Aloha Payroll taxes were returned to QuickBooks and we cannot transmit payroll until the funds are wired to quickbooks. I have enough money in CTG to cover at least the returned payroll checks and taxes.

I will keep you updated as I receive information.

We all need to understand that even if we make it through the next 2 or three days, we will have to make significant changes in the way we do business. BofA will no longer allow instant credit for VA checks, so the merchant money will need to be moved by wire, thereby eliminating any float. We will no longer be able to use the anticipated deposits from Thursday and Friday to cover ARC sweeps, but will be required to have the entire amount, as collected funds, available on Wednesday. Out current cash flow will not support that program. I also have issues with the inaccuracy of the banking reports and the resulting effect on my cash flow projections.

I'm out of ammunition, magic tricks, creative ideas, etc to remedy this situation…any suggestions or assistance would be appreciated…

# EXHIBIT "H"

----- Message from "Bob - Aloha" <bobk@alohacontinental.com> on Mon, 22 Dec 2003 17:10:20 -0700
-----

          **To:** "'Joe & Lisa Russell'" <trvl0101@cox.net>
        **Subject:** RE: First Mutual

Joe,

                Are there any 1st Mutual files in Orange County or are they all
at
IRD?  Just trying to get it straight.

Bob

-----Original Message-----
From: Joe & Lisa Russell [mailto:trvl0101@cox.net]
Sent: Thursday, December 18, 2003 7:57 AM
To: Bob Kremer
Cc: mrenda@simplernet.com
Subject: First Mutual

The following First Mutual items need to be addressed...

I have received a call from one of the mortgage holders, Susan Wells. You
indicated you would be preparing the mortgage checks, inclusive of late
fees. Please let me know if you need assistance with this.

There is an outstanding cleaning bill for 6K that goes back to June...Kevin
gave them my cell number and they have been calling every day...Kevin should
have a copy of the bill, if not please let me know.

Kevin has also requested financial statements...you and Mario need to
discuss this, as there is now income on the First Mutual books generated by
the checks written from CTC for the old Costa lease...I'm sure Kevin should
not participate in this?

My surgery is at 6:00 am tomorrow, so I will be unavailable until Monday,
and then only by telephone for a few days (hopefully). I can walk you or
Domini through what needs to be done to get the bills paid via telephone...

Please advise.